BERGEMAN, *Appellant*, v. THE INDIANAPOLIS AND ST. LOUIS RAILROAD COMPANY.

DIVISION TWO.

1. **Sale:** PAYMENT OF PURCHASE PRICE: DELIVERY OF POSSESSION. On a sale of mules the vendor receiving a small sum of money at the time and a draft for the balance of the purchase price on certain commission merchants to whom he consigned the animals, to be by them delivered to the vendee on payment of the draft and not before, the possession would remain in the vendor and his agents until the purchase price was paid.

2. ——: ——: ——. The retention of the bill of lading by the vendee and the forwarding of the same with the draft to the consignees, of themselves, sufficiently indicated the intention of the vendor to retain the possession and control of the mules until payment of the draft.

3. ——: FRAUD: RESCISSION BY VENDOR: RIGHT OF STOPPAGE IN TRANSITU. A vendor who by the contract of sale is to keep the possession of the property sold, until the purchase price is paid, has the right, where the vendee gets possession by improper means, making it tortious, to retake the property and place himself in the position where the contract left him, and this he may do without restoring to the vendee a part of the purchase price paid at the time of the sale.

104　77
71a 631

104　77
75a 53

104　77
78a 88

104　77
86a 72

104　77
92a[11]661

104　77
95a[11]627
98a [6]425

104　77
101a [6]173

Bergeman v. The Indianapolis & St. L. Ry. Co.

4. ———: ———: ———: ———: STATUTE. Section 2505, Revised Statutes, 1879, has no application to a case where a vendee fraudulently obtains possession of personal property sold before payment of the purchase price and sells it to a third party to whom it is consigned, and the original vendor exercises his right of stoppage *in transitu*, where the contest is between the last purchaser and the carrier for the value of the property which it failed to deliver.

5. ———: DELIVERY: STATUTE. The latter clause of section 2505, Revised Statutes, 1879, has no application to a sale of personal property where possession was never given to the vendee.

6. ———: PRINCIPAL AND AGENT: EVIDENCE. The acts, declarations and admissions of an agent in reference to the business of the principal with which he has been intrusted, if made while engaged in its execution, or so soon thereafter as to constitute a part of the transaction, will bind the principal and are admissible in evidence against him.

7. ———: ———: ———. When the acts of the agent will bind the principal, his declarations respecting the subject-matter will also bind him, if made at the time.

8. Practice: INSTRUCTIONS. Where a cause has been fairly submitted to the jury under instructions given by the court, nothing more should be required. and the appellate court will not critically examine instructions refused in order to discover one that might appropriately have been given.

9. ———: PRINCIPAL AND AGENT: FRAUD: EVIDENCE. Evidence that an agent, who bought property from one who had fraudulently obtained possession of it under a contract of purchase, was an old acquaintance of his vendor, that the conduct of the sale was unusual, that the payment by the agent was not according to the usual custom, that when charged with knowledge of the fraud he made no denial, and that, although present at the trial, he was not called as a witness, will justify the submission to the jury of the question whether the agent knew of the fraud.

10. ———: ———: ———: NOTICE. Where the only right a vendor has to the possession of the property sold is a statement fraudulently obtained, knowledge by the agent of the buyer that this statement was false, will prevent his principal from being an innocent purchaser.

11. Practice: INSTRUCTIONS. Instructions embodying abstract propositions of law correct in themselves should not be given when not predicated upon the evidence in the particular case to be determined.

*Appeal from St. Louis City Circuit Court.*—Hon. Shepard Barclay, Judge.

Affirmed.

*George B. Burnett* and *George S. Grover* for appellant.

The court erred in overruling plaintiff's objection to the introduction of any evidence by defendant, because, from the averments of the answer, it appears that at the time of the delivery of the mules to Grant he was not entitled to possession of them. By the transaction between Grant and Dennis, the latter became invested with the property in the mules and also with the possession. *State v. Dennis,* 80 Mo. 589. Grant's only right to repossess the mules and the only right defendant had to redeliver them was based upon Grant's right to rescind the sale to Dennis ; but the right to rescind depended upon Grant's restoring what he had received on the sale. *Thayer v. Turner,* 8 Met. 551 ; *Ayers v. Hewitt,* 14 Me. 281 ; *Fisher v. Conant,* 3 E. D. Smith, 199 ; *Mason v. Barrett,* 3 Denio, 69 ; *Stewart v. Dougherty,* 3 Dana, 479 ; *Keteltas v. Fleet,* 7 Johns. 324 ; *Kimball v. Cunningham,* 4 Mass. 502 ; *Jennings v. Gage,* 13 Ill. 610 ; *Estes v. Reynolds,* 75 Mo. 563 ; *Bibb v. Means,* 61 Mo. 284 ; *Melton v. Smith,* 65 Mo. 315. ( 2 ) The court admitted improper testimony against the objections of plaintiff. *Rodgers v. McCune,* 19 Mo. 557 ; *McDermott v. Railroad,* 73 Mo. 516 ; *Adams v. Railroad,* 74 Mo. 553 ; *Aldridge v. Furnace Co.,* 78 Mo. 559 ; *Scovill v. Glasner,* 79 Mo. 449 ; *Chillicothe ex rel. v. Maynard,* 80 Mo. 185 ; *Railroad v. O'Brien,* 119 U. S. 90. ( 3 ) The court gave improper instructions of its own motion and at the instance of defendant. *First.* The fifth instruction given for the defendant assumes there was evidence

before the jury from which they might find that Meyers had knowledge of efforts on the part of Dennis to cheat and defraud Grant, and that Meyers knew the possession of the mules had been obtained by Dennis by fraud and deception, whereas there is not a scintilla of evidence in the record to support such a finding. Fraud is never to be presumed, but must be established by proof. *Priest v. Way*, 87 Mo. 13. It is error to give instructions upon a theory which has no evidence to support it. *Gerren v. Railroad*, 60 Mo. 410; Thompson on Charging the Jury, p. 75; *Dowling v. Allen*, 88 Mo. 293. *Second.* The fourth instruction given by the court of its own motion announces the proposition that if Meyers knew Dennis had not paid Grant for the mules, and that he was yet indebted to Grant for the purchase price thereof, then plaintiff was not an innocent purchaser of said mules. (4) The court refused to give proper instructions asked by plaintiff. *Sawyer v. Railroad*, 37 Mo. 241; *Muldowney v. Railroad*, 32 Ia. 176.

*Everett W. Pattison* for respondent.

The principles upon which the decision of this case rests may be stated as follows: (1) Where, by the terms of the bill of lading, the vendor makes the property deliverable to his own order, or to his agent, this fact is, when not rebutted by evidence to the contrary, almost decisive to show that it was the intention of the vendor to reserve the *jus disponendi*, and to prevent the property from passing to the vendee. 1 Benj. on Sales [ Corbin's Ed. ] 567, and English cases cited, for American cases see section 578; *Ogg v. Shuter*, L. R. 1 C. P. Div. 47. And for the purposes of this case it makes no difference whether the vendor intends to retain the *jus disponendi* absolutely, or only so long as the purchaser continues in default. *Mirabita v. Bank*, L. R. 3 Exch. Div. 164; *Brunswick Co. v. Marlin Co.*, 20 Mo. App. 158.

(2) If the vendor deals with the bill of lading only to secure the contract price, then the property vests in the buyer upon payment or tender by him of the contract price. 1 Benj. on Sales [ Corbin's Ed. ] 572, and cases cited in note ; also 590 ; *Bank v. Homeyer*, 45 Mo. 145, and cases above cited from 3 Exch. and from 20 Mo. App. ; *Welsh v. Bell*, 32 Pa. St. 12. Nor is it necessary that the vendor should declare in express terms that he retains the title. *Stone v. Perry*, 60 Maine, 48. (3) If the price is not paid, and the buyer has obtained possession of the goods, the vendor may regain the same from the vendee or from anyone claiming under him ; and it is not necessary to pay or tender back such portion of the purchase money as the vendor has received. *Fleck v. Warner*, 25 Kan. 492 ; *Duke v. Shackelford*, 56 Miss. 562 ; *Everett v. Hall*, 67 Maine, 497 ; Benj. on Sales [ 4 Am. Ed. ] sec. 429, and cases cited ; *Robinson v. Baker*, 5 Cush. 137. (4) It is only when the vendor gives to the vendee both the possession of the property and the *indicia* of ownership, that an innocent purchaser for value can hold the property against the original vendor. *Leigh v. Railroad*, 58 Ala. 165, 176. See, also, *McMahon v. Sloan*, 12 Pa. St. 233, cited in 1 Benjamin on Sales [Corbin's Ed] 449, in which the possession of the property, as well as of the *indicia* of ownership, is recognized as essential. (5) If one claims to hold the goods as an innocent purchaser, it is incumbent upon him to show that he actually paid value for the property. *Young v. Kellar*, 94 Mo. 581 ; *Paul v. Fulton*, 20 Mo. 156 ; *Arnholt v. Hartwig*, 73 Mo. 485 ; *Jewett v. Palmer*, 7 Johns. Ch. 68 ; *Weaver v. Barden*, 46 N. Y. 286 ; *Haskins v. Warren*, 115 Mass. 514 ; *Palon v. Coit*, 5 Mich. 509 ; *Fosdick v. Schall*, 99 U. S. 235, 250 ; 25 L. Ed. 342. (6) The transaction in question was pending during the whole of Sunday, January 14, and the statements of plaintiff's agent made at any time during that day were admissible as part of the *res gestæ*. *Singleton*

*v. Mann*, 3 Mo. 464 ; *Bank v. Williams*, 46 Mo. 17 ; *Robinson v. Walton*, 58 Mo. 384 ; *Leahey v. Railroad*, 97 Mo. 165 ; *Boatmen's Ass'n v. Kribben*, 48 Mo. 37. (7) There was no error in giving or refusing instructions.

MACFARLANE, J.—This is a suit against defendant, as a common carrier, to recover the value of twenty-four mules delivered by plaintiff to it, at East St. Louis, on the fourteenth day of January, 1883, to be carried to the city of Baltimore and there delivered to plaintiff, and which it neglected and failed to do ; but on the contrary it carried them to the city of Indianapolis, and there wrongfully delivered them to some person unknown to plaintiff.

The answer was a general denial and a special defense substantially as follows :

The mules were the property of Thomas J. Grant, a resident of Randolph county, Missouri ; that one John B. Dennis and William Meyers fraudulently conspired to get possession of said mules, and dispose of them ; in order to carry out the scheme of fraud, Dennis went to Grant's farm, in Randolph county, and made a contract for the purchase of said mules upon which a small sum in money was paid, and a draft was drawn on McPike & Johnson, commission merchants, in St. Louis, for the balance ; the mules were shipped over the Wabash railroad to St. Louis, consigned to McPike & Johnson, under the agreement that they should be delivered to Dennis, upon payment of the draft, but not before ; that, on the day after the mules arrived in East St. Louis, Dennis pretended to sell them to Meyers, who was at the time the agent of the plaintiff, engaged in the purchase of mules for him ; that Meyers and Dennis fraudulently obtained possession of the mules from McPike & Johnson without paying the draft, and had them shipped over defendant's road, consigned to plaintiff at Baltimore ; that upon being advised of these facts, defendant returned the mules from Indianapolis, which point they

had reached, and delivered them to Grant at East St. Louis. The reply was a general denial.

The following facts were disclosed by the evidence : Plaintiff, Joseph Bergeman, lived in Baltimore, in Maryland, and had for many years been engaged in buying and selling horses and mules. William Meyers had been his agent in buying mules for fifteen years. McPike & Johnson were live-stock commission merchants at East St. Louis ; Dennis lived in St. Louis and had occasionally bought and sold mules on his own account. Grant was a farmer in Randolph county and also bought, fed and sold mules, Dennis had, previous to January, 1883, on two or three occasions bought small lots of mules from Grant. Dennis was also known to Meyers and McPike & Johnson. On about the twelfth of January, 1883, Dennis went to Grant's home and proposed purchasing twenty-four mules he then had for sale. After some negotiations the price was agreed upon. During the negotiations Dennis spoke of wishing to buy such mules as would suit Meyers. Dennis told Grant that the money was deposited with McPike & Johnson to pay for the mules ; that Meyers had deposited it. Dennis paid $80 in cash, and gave his draft on McPike & Johnson for balance, $3,248. The mules were loaded into a car and a receipt or bill of lading of the company was taken which recited that Grant had shipped to McPike & Johnson twenty-four head of mules.

Grant then sent the draft and bill of lading by mail to McPike & Johnson, with the following letter, after the date and address :

"I inclose you a draft for $3,248, which you will please honor by sending check to me to Randolph Bank at Moberly. The draft is for twenty-four mules sold to John B. Dennis."

The mules were forwarded Friday night, the thirteenth. The draft and letter were not mailed until the next day. After the mules had been loaded, Dennis asked Grant for a statement showing what had been

paid for the mules, in order that Meyers would know he was not putting up a job on him. Thereupon Grant gave him the following statement, addressed to McPike & Johnson:

"I have this day sold John B. Dennis twenty-four head of mules for $140 a head."

The mules were delivered to McPike & Johnson by the railroad company, Sunday morning, January 15, before they received the letter and draft. The statement given Dennis by Grant was shown McPike & Johnson, who were informed that the mules had been sold to Meyers; thereupon, at request of Meyers, they were forwarded to plaintiff over defendant's road.

After the mules had been forwarded from East St. Louis, in a settlement between Meyers and McPike & Johnson, the latter learned that Meyers claimed to have paid Dennis for the mules. They became suspicious and telegraphed to Indianapolis for the return of the mules. Defendant returned them to Grant at St. Louis, and plaintiff brought this suit for damages. It will be seen the real contest is between plaintiff and Grant. What transpired at St. Louis, before and after the shipment to plaintiff, will more fully appear in the opinion.

I.   The first objection urged by appellant is that no evidence was admissible under the answer, for the reason that it appears therefrom, that Grant was not entitled to the possession of the mules, at the time they were delivered to him by defendant.

We do not think the transaction, between Grant and Dennis, as detailed in the answer, constituted an absolute sale of the mules, but only an agreement to sell upon condition that the purchase price should be paid upon delivery at St. Louis.

The answer states, with great particularity, that Grant informed Dennis that he would only sell for cash. On being advised by Dennis, that the money was on deposit with McPike & Johnson, it was agreed that

Dennis " would pay cash for them upon delivery to him at the stock-yards of McPike & Johnson in St. Louis." Under the contract set up in the answer, the possession was to remain in Grant and his agents, until the purchase price should be paid. No facts are subsequently stated in the answer, which recognize any right in Dennis to the possession ; on the contrary it is specifically charged that Dennis and plaintiff's agent, Meyers, fraudulently and wrongfully obtained the possession from McPike & Johnson at St. Louis.

This understanding is strengthened, if not conclusively shown, by the manner in which it was performed by Grant, in so far as he could control its performance. The answer states that the mules were delivered to the railroad company by Grant and consigned to McPike & Johnson. The bills of lading were retained by Grant and forwarded with the draft to the consignees. The manner of the shipment and the terms of the bill of lading sufficiently, in themselves, indicate the intention of Grant to retain the possession and control of the mules until payment of the draft. *Bank v. Homeyer*, 45 Mo. 146 ; Hutch. on Carriers, sec. 130 ; 1 Benj. on Sales, 567.

It is insisted, in this connection, that before the contract of sale could have been rescinded by Grant, there must have been a return to Dennis of the amount paid, and the answer makes no allegation of a restoration of the money paid, or an offer to do so. There can be no doubt of the correctness of the legal proposition insisted on, that, where one party elects to rescind a voidable sale, he must first return the whole of the consideration paid thereon, but we think it has no application to the case in hand. If, as the answer charges, Grant was to retain possession of the property until the money was paid, and if Dennis got possession by improper means, his possession was wrongful and tortious, and Grant had the right to retake it and place

himself in the situation in which the contract left him. *Page v. Crosby*, 24 Pick. 215; *Fleck v. Warner*, 25 Kansas, 492; *Duke v. Shackleford*, 56 Miss. 552; *Everett v. Hall*, 67 Maine, 497.

Neither do we think the facts stated in the answer bring the transaction under any of the provisions of section 2505, Revised Statutes, 1879. If Grant had sold the mules to Dennis, and, retaining possession, had sold and delivered them to an innocent purchaser, as between Dennis and the purchaser the statute might apply. The latter clause of the section has no application, for the reason that the possession was never given to the vendee.

II. It is insisted that the court committed error in permitting witnesses to testify to certain acts and declarations of Meyers, who was plaintiff's agent, in regard to the sale of the mules by Dennis to him at St. Louis, for the reason that they were made after the purchase and shipment of the mules had been completed.

It is a well-settled rule of the law of agency that the acts, declarations and admissions of an agent, in reference to the business of the principal, with which he has been intrusted, if made while engaged in its execution, or so soon thereafter as to constitute a part of the transaction, will bind the principal, and are admissible in evidence against him. " Where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting part of the *res gestæ*." Story on Agency, sec. 134; Mechem on Agency, sec. 714; *Rogers v. McCune*, 19 Mo. 557; *Robinson v. Walton*, 58 Mo. 384; *Leahey v. Railroad*, 97 Mo. 165; *Railroad v. O'Brien*, 119 U. S. 90; *Western Boatman's Ass'n v. Kribben*, 48 Mo. 37; *Union Sav. Ass'n v. Edwards*, 47 Mo. 449.

To determine whether the admission of the acts and declarations complained of fall under this rule, an examination of the evidence, to ascertain the circumstances under which they were made, becomes necessary.

That Meyers was the agent of plaintiff, with full authority to buy mules at St. Louis, direct their shipment, agree upon terms of payment, make payments in cash or by drafts on plaintiff, and generally to manage the business of plaintiff at St. Louis is undisputed.

The mules arrived at the stables of McPike & Johnson on Sunday morning. During the day negotiations, real or pretended, were carried on between Dennis and Meyers for the purchase of the mules by the latter. It was finally announced to Johnson by Meyers that the purchase had been made, and directions were given to forward them over defendant's road to plaintiff at Baltimore. The shipment was made in the afternoon between twelve and three o'clock.

The mules had been consigned to McPike & Johnson, but Dennis obtained the assumed right to sell by presentation of the statement he had procured from Grant, to the effect that he had paid $140 per head for the mules. The negotiations between the parties were had in and about the stable and yard of McPike & Johnson.

Other transactions, in the purchase of mules, between Meyers and these commission men, remained unsettled. It was the custom, known to Meyers, that, when purchases were made at the stable, accounts were kept and settlements made through the proprietors of the stable. After the mules had been forwarded, at four or five o'clock of the same day, Johnson, or his bookkeeper, made out for Meyers, as agent for plaintiff, a statement of his account, of recent purchases of mules, in order to have a settlement. This statement included the purchase of Grant's mules, the item amounting to $3,400. When this statement was presented to Meyers, he objected to this item of $3,400,

asserting that he had paid Dennis in cash for these mules, and the amount should not be included. Johnson then informed Meyers that it was a steal, and he (Meyers) knew it. No answer was made to this charge. Johnson then told Meyers not to leave town until the matter was settled. One of the objections made by plaintiff was to a witness testifying to this conversation.

On the conclusion of this interview, Johnson went out to hunt for Dennis. A witness, Gross, and Johnson between five and six o'clock, went to Meyer's hotel and inquired for Meyers and Dennis; neither was in. Witness then states in his testimony: "We started up Biddle street and between Biddle and O'Fallon we met Bill Meyers, and Johnson says: 'Billy, did you see Dennis?' he says, 'No; I didn't;' he says: 'Bill Meyers, this is a damn steal and you know it;' Meyers made no reply at all; I carried a telegram to the telegraph office to stop the mules.". The evidence of this witness in regard to this conversation between Johnson and Meyers was objected to.

When we keep in mind that Johnson was the consignee and agent of Grant; that he had the right to collect the purchase price of the mules; that Meyers had general authority from plaintiff to settle and pay for mules purchased; that payments were usually made through the commission firm; that payments had not been made, if made at all, in the usual way; that Johnson had the right to call on Meyers for payment; that the mules were still in transit consigned by McPike & Johnson to plaintiff, we must conclude that, at the time of these conversations, Meyers' authority to bind his principal continued; that the transaction was not complete; and that a settlement, if one had been made by Meyers at that time, would have bound plaintiff. We think the evidence was admissible under the rule stated above that when the acts of the agent will bind the principal, his declarations respecting the subject-matter will also bind him if made at the time.

III.  Complaint is also made to the action of the court in giving and refusing instructions.

Plaintiff asked fourteen, and the court gave six of them.  Defendant asked a number, and the court gave two of them.  The court on its own motion gave seven, which undertook to cover every phase of the case.  It is not reasonable to suppose that a trial judge can give a critical examination to each instruction when so many are asked.  Neither under such circumstances should an appellate court examine critically those refused in order to discover one that might appropriately have been given.  If the case was fairly submitted to the jury under the instructions that were given, nothing more should be required.

The closing paragraph of an instruction was as follows:  "If you believe from all the facts and circumstances that Meyers knew that the possession of the mules had been obtained by Dennis by fraud and deception, and that Dennis had not paid for the same, then you will find that the plaintiff was not the innocent purchaser of said mules."

It is insisted that there was no evidence before the jury upon which this instruction could have been predicated.  The objection was substantially disposed of in considering the sufficiency of the answer.

The evidence shows, beyond doubt, that Dennis obtained possession of the mules by fraudulent methods. The circumstances, we also think, are sufficient to create a strong probability that Meyers had notice of the methods used.  Some of such circumstances, the evidence tends to prove, are, that Meyers and Dennis were old acquaintances ; that Dennis went to the country to purchase mules for Meyers ; that the mules came in on Sunday morning consigned to McPike & Johnson ; that the negotiations between the parties were unusual ; that the payment by Meyers was not according to the usual custom ; that Meyers obtained the cash on Saturday

and carried it on his person over Sunday; that the payment was made in cash, if made at all, and not by draft or check ; that when charged with knowledge he made no denial; that Meyers was present at the trial and was not called as a witness.  From these circumstances the jury might well infer that Meyers had full knowledge of, if not complicity in, the fraudulent acts of Dennis, and the question was properly submitted to them.

The fourth instruction given by the court is as follows :  "If you find from the evidence that Meyers was agent for plaintiff for the purchase of the mules in question, and that prior to the delivery of the mules to Meyers or to the defendant for shipment to plaintiff, and before payment to Dennis for the mules, said Meyers had knowledge of such facts and circumstances as would lead a man of ordinary prudence and care in like situation to infer that said Dennis had obtained said mules by any false representation as explained in instruction, numbered 3 (three), or that said Dennis had not paid for said mules to Grant, and was yet indebted to Grant for the purchase price thereof, then the plaintiff was not an innocent purchaser of said mules; but, unless you so find, then he was an innocent purchaser of said mules."

The objection made to the latter part of this instruction is "that a vendee of personal property may have knowledge that his vendor is indebted for the property which he purchased and yet be an innocent purchaser of it."

An instruction must be predicated upon the evidence in the particular case to be determined.  Abstract propositions of law, though correct in themselves, may not apply to the facts of a particular case.  The only apparent right Dennis had to the possession of the mules was the statement fraudulently obtained from Grant as follows :

"GENTS:—I sold to-day to Mr. John B. Dennis twenty-four mules for $140 per head which makes $3,360.                        T. J. GRANT."

The consignment of the mules by Grant to McPike & Johnson, with no other direction, implied that they had the right to hold until they received instructions from the consignor. The only right Dennis had to take possession, sell and collect the proceeds was this statement fraudulently procured from Grant. If Meyers knew this statement was false, and the mules had not been paid for, the only foundation for his right to purchase from Dennis was destroyed, and his purchase could not be characterized as innocent.

The court instructed the jury that the statement given by Grant to Dennis gave apparent authority to Dennis to sell and deliver the mules, and upon which the purchaser had a right to rely, and that the burden was upon defendant to prove knowledge on the part of Meyers of the fraudulent acts of Dennis. The instructions were very favorable to plaintiff and he has nothing of which he ought to complain. Judgment affirmed. All the judges of this division concur.