BONNETT BROWN SALES SERVICE, Appellant, v. TOM W. KLEPPER, Respondent.*

Kansas City Court of Appeals. November 10, 1924.

1. CONTRACTS: Where Newspaper Publisher Contracted to Furnish Sales Service and Selection of Stereotypes Held Not Entitled to Substitute Matrices for Stereotypes. Where defendant, a newspaper publisher, contracted for "sales service," which consisted of use of ads and selection of stereotypes, for which an extra charge was to be made purchaser if sterotyping were done by seller, *held* under contract not to permit substitution of matrices for stereotypes without extra cost.

2. ————: When Time of Delivery Not Fixed it is Not Essence of Contract and Law Implies Delivery Within a Reasonable Time. When time of delivery is not fixed or is stated in general and indefinite terms, time is not the essence of the contract, the law implying delivery within a reasonable time, in absence of anything to show that an immediate delivery is intended.

3. ————: Under Contract to Furnish Stereotypes for Use in Newspaper Time Held Essence of Contract. Under contract to furnish sales service consisting of use of stereotypes to purchaser thereof for use in publication of newspaper time is *held* essence of contract.

4. ————: Question Whether Order for Stereotypes Was Shipped Promptly Held for Jury. Question whether stereotypes were shipped on next mail after receipt of orders and would have been received by purchaser, if there were no delays in trains, within two days after orders were mailed, if filled promptly, *held* for jury.

5. INSTRUCTIONS: Instruction Held Erroneous as Giving Jury Roving Commission to Find for Defendant if Plaintiff Violated Contract Without Stating Issues Made by Testimony. An instruction that if jury found plaintiff failed to carry out terms of contract to furnish sales service, consideration for note sued on failed, *held* erroneous as roving commission to jury to find for defendant if in its

opinion plaintiff violated contract, without stating the issues made by the testimony.

6. **EVIDENCE:** Evidence as to What Promptness Was Necessary Under Contract for Shipment of Goods Held Inadmissible as a Conclusion. Testimony of defendant as to what promptness was necessary on part of plaintiff under contract to ship stereotypes to him, *held* inadmissible as a conclusion, such question depending upon the circumstances surrounding the execution of contract.

*Corpus Juris-Cyc. References; Contracts, 13CJ, p. 586, n. 21; p. 686, n. 35. Evidence, 22CJ, p. 498, n. 84, New. Sales, 35 Cyc., p. 179, n. 10, 11; p. 180, n. 12, 13, 14, 15; p. 575, n. 87. Trial, 38 Cyc., p. 1617, n. 34; p. 1621, n. 43.

Appeal from the Circuit Court of Clinton County.—*Hon. Guy B. Park,* Judge.

REVERSED AND REMANDED.

*W. S. Herndon* for appellant

*Frank B. Klepper* and *C. H. Harrison* for respondent.

BLAND, J.—This is a suit upon a promissory note in the sum of $100, executed by defendant in favor of plaintiff and payable in monthly installments of $5.56 each. The note contained a provision that if any installment remained unpaid, the whole note should become due and payable at once. The payments were to be made on or before the fifteenth of each month, beginning October 1, 1921. Defendant paid the October installment but refused to pay more, resulting in plaintiff's bringing this suit. The defense was a failure of consideration. There was a verdict and judgment in favor of defendant and plaintiff has appealed.

The note was made in connection with the execution of the following contract between the parties (only the material part being quoted) ;

"For value received Bonnet-Brown Sales Service agrees upon its acceptance hereof at its principal place of business in Chicago, Illinois, to furnish its matrix sales service to Optimist (hereinafter named the purchaser), together with exclusive right and license to use such sales service in Lathrop, State of Missouri, for the period of September 1, 1920 to March 31, 1921. Such Sales Service to be sent at purchaser's expense and risk and to consist of the following.

"Use of ads and unlimited Selection of Stereotypes on the following Supplements:

Men's Service, about 5 supplements per month.

Women's Service, about 5 supplements per month.

Newspaper Service, about 6 supplements per month.

Furniture Service, about 4 supplements per month.

Big Book August and September Service Free.

Stereotyping is to be done by us, if the above mentioned unlimited selection plan is hereby agreed to be furnished, at an extra charge to the purchaser of 2¢ per square inch with a minimum charge of 20¢ per Stereotype. Mortising also extra—outside 15¢, inside 20¢."

Defendant published a newspaper in Lathrop, Mo., styled "The Lathrop Optimist." Plaintiff had its place of business in Chicago and furnished to newspapers its "Sales Service" which consisted of sheets of illustrations of cuts and a loose-leaf book for the binding of these cuts, referred to in the contract as the "Big Book." These illustrations were furnished monthly to the users of its service. The users of the service would select from these illustrations what cuts he thought his advertisers would want or would exhibit them to his proposed advertisers so that they could select the cut. When the illustration desired by the advertiser to appear in the paper was selected, the user of the service would order the stereotype from plaintiff at Chicago and the same would be furnished by plaintiff and sent to the owner of the newspaper to be used in printing his paper.

Defendant testified that he used the service in September and October but on account of the stereotypes

not arriving in time for use in his paper he did not attempt to make use of it further and after vainly trying to get defendant to ship the stereotypes in time finally, in May, 1921, notified the postmaster at Lathrop that he would not receive any more of the illustrations out of the post office. Defendant further testified that the Optimist was a weekly paper which was printed upon Thursday and that he solicited advertisers by the use of the illustrations a sufficient time to obtain the ster-- eotypes from plaintiff at Chicago before his paper came out; that he would order the stereotypes on Friday but that they would not arrive in time and that the space where the advertisement was to appear in his paper was left blank to the disappointment of his advertiser and with loss of business to himself; that in the usual course of mail an order mailed from Lathrop to Chicago if mailed in time for the evening train would bring the shipment back on the second morning; that stereotypes delivered in four or six days after they were ordered could have been used by him but that they did not arrive within this time.

Defendant had some correspondence with plaintiff about the delay, plaintiff claiming that defendant's orders were filled the same day they were received. Defendant testified that he finally "tried to cancel my contract, or change it to matrix service, so I could use it;" that he did not have a stereotyping outfit at the time he entered into the contract but later acquired one and asked plaintiff to send him matrices in place of sheets (stereotypes?) and that plaintiff then sent him another price list and "wanted more money." The contract provided that the service for the first two months should be free but defendant testified that plaintiff tried to charge him for this service.

The evidence shows that a matrix is a paper mold upon which molten lead is poured and when cooled, trimmed and mounted on wood becomes a cut ready for printing. This process is called sterotyping and the cut is called a stereotype or an electrotype.

Plaintiff's president testified that when the users of its service were unable to make the stereotype that it sent out to stereotypers in Chicago the "mats" (we judge a mat to be the same as a matrix) and had them make the stereotypes, charging the user for the service an extra sum above the contract price equal to the actual cost of the work to plaintiff.

It seems that the stereotypes sent to defendant were in plaintiff's stock for the reason that the testimony of plaintiff shows that they were sent by return mail. However, defendant's construction of the contract shown by his testimony to the effect that he had a right to change to matrices without extra cost, is erroneous. The contract does not provide for the substitution of matrices for stereotypes but provides that the stereotyping was to be done by plaintiff at a specific cost to the defendant. As before stated, it does not provide for a substitution of matrices for stereotypes without extra cost to the defendant, in fact, it does not provide for any such substitution at all.

Plaintiff insists that the court should have given its peremptory instruction to find for it. Waiving aside the question as to whether a court can give a peremptory instruction for plaintiff where plaintiff's case, in part at least, is founded upon parol testimony, we think there is no merit in the contention. Plaintiff rests the contention upon the claim that it was required under the contract only to mail at Chicago the stereotypes to defendant within a reasonable time after receiving the orders for them, and that the evidence is undisputed that plaintiff immediately mailed the stereotypes upon the receipt of the orders.

We think that in view of the facts and circumstances surrounding the execution of the contract that time was of the essence of the contract although no time for the delivery of the stereotypes is mentioned in it.

"When the time of delivery is not fixed or is stated in general and indefinite terms, time is not of the essence of the contract. The law implies, however, that if no

time is fixed, delivery shall be made within a reasonable time, in the absence of anything to show that an immediate delivery is intended. But that an immediate delivery is intended may appear from the terms of the contract, or the circumstances attending the transaction; and if such intent does appear time is of the essence of the contract." [35 Cyc. 179, 180. See, also, Wall v. Ice & Cold Storage Co., 112 Mo. App. 659, 664.]

What were the circumstances attending the execution of this contract? There is no evidence that defendant related to the agent of plaintiff, who solicited the contract, his method of doing business, but it is fair to assume that plaintiff knew that defendant was publishing a country weekly and that he would use these illustrations in soliciting advertising from the local merchants; that when a merchant decided to insert an ad, it would be reasonable to suppose that ordinarily he would want it inserted in an early issue of the paper. If the ad was to be so inserted, it was necessary for plaintiff to ship the stereotypes with promptness after receiving the order. The question as to whether under the terms of the contract plaintiff had a right to send out the work of making stereotypes, or had a reasonable time to make them itself, is not in the case for the reason that plaintiff's evidence shows that each of these stereotypes was shipped in the next mail after receiving the order. Evidently plaintiff construes the contract as requiring prompt shipment of the stereotypes on its part for the reason that two of its witnesses testified that the stereotypes actually were promptly shipped, and the evidence of plaintiff's president shows that it realized the necessity of prompt shipment, because he testified that it was plaintiff's understanding that the users of its service might want to take the illustrations to advertisers and allow them to choose what illustration they desired to have inserted in the paper. This disclosed that plaintiff understood in advance that when defendant would order a stereotype it probably would be for insertion in his paper at an early date.

Time was, therefore, of the essence of the contract and while plaintiff's testimony shows that defendant's orders were immediately filled by shipping the stereotypes on the next mail after receipt of the orders, this evidence is not undisputed. Defendant testified that he would have received the stereotypes at Lathrop if his orders were filled promptly within two days after the orders were mailed at Lathrop and that they did not in fact arrive within six days after he mailed the orders. Of course, under the terms of the contract plaintiff would not be responsible for any delays in trains. The demurrer to the evidence was properly overruled.

Complaint is made of defendant's instruction No. 1, which reads as follows:

"The jury are instructed that if you find and believe from the evidence that the consideration for the note mentioned in the evidence was the promises and agreements to be performed by the plaintiff in the contract mentioned in the evidence wherein plaintiff agreed to furnish to defendant its Bonnett-Brown Sales Service, if you find there was such a contract, and if you further believe and find from the evidence that the plaintiff failed to carry out such promises and agreements and that by reason of such failure, if you so find, such service was rendered of no value for any purpose whatever to defendant then you are instructed that the consideration for said note failed and plaintiff cannot recover thereon and your verdict will be for the defendant."

We think this instruction was clearly erroneous. It was a roving commission to the jury to find for the defendant if in its opinion plaintiff violated the contract without stating to the jury the issues made by the testimony. The only real defense that defendant can make, so far as the present record in the case shows, is that the stereotypes were not shipped promptly by plaintiff, but the instruction is much broader than this and in fact submits a question of law to the jury. The instruction is palpably bad. [Fleischmann v. Miller, 38 Mo. App. 177;

Bergman v. Ry. Co., 104 Mo. 77; Kibble v. Ragland, 263 S. W. 507, 512.]

However defendant insists that the jury could not have misunderstood what the issue was as there was but a single disputed fact and that was as to the promptness of the shipments; that the jury could not have decided the case upon any other issue. We are not convinced that the jury was not misled as to what was the issue. Defendant in his testimony laid great stress on the point that the stereotypes did not arrive in time, that was his main complaint, and the jury may have received the impression that under the contract it was necessary for plaintiff to get the cuts to defendant in time for defendant to use them regardless of any other circumstances. The contract provided that the stereotypes were to be shipped at defendant's risk. Plaintiff was required to do no more than promptly ship the stereotypes after it received the order and if it did this, it was not responsible for delay in transit. It would appear from defendant's testimony that he was claiming some violation of the contract on the part of plaintiff because the contract provided that he might order matrices instead of stereotypes at the same price that he was paying for the stereotypes, but that plaintiff refused to ship matrices unless defendant would pay it more. He also testified that plaintiff attempted to charge him for the free service it agreed in the contract to give. Under these circumstances it is difficult to tell what the jury might have thought the violation of the contract consisted of.

Complaint is made of the admission of testimony but from what we have said concerning the law in the case it will not be difficult to properly re-try the case. Of course, it would be error for the court to allow defendant to testify as to "what promptness was necessary" on the part of plaintiff under the terms of the contract. That question would depend, as we have before stated, upon the circumstances surrounding the execution of the contract. These circumstances should be shown

in the evidence rather than to permit defendant to give his conclusion as to what promptness was required under the terms of the contract. The way the witness answered the question as to "what promptness was necessary" would indicate that he did not put the construction upon the question that plaintiff now places upon it, but answered it by stating within what time it was necessary for him to get the stereotypes to use in his paper after sending in the orders.

The judgment is reversed and the cause remanded. All concur.