LESLIE TINDALL v. MARSHALL's U. S. AUTO SUPPLY COMPANY, INC., a Corporation, Appellant. No. 37678.

LESLIE TINDALL, Appellant v. HERBERT CALKINS and WALLACE P. COWAN. No. 37679.—159 S. W. (2d) 302.

Division One, December 12, 1941.

Rehearing Denied, February 26, 1942.

*Francis O'Sullivan* and *Charles M. Miller* for appellant in Case No. 37678.

*Homer A. Cope, Cope & Hadsell, James H. Snyder* and *Walter A. Raymond* for respondent.

*Homer A. Cope, Austin D. Hadsell, James H. Snyder* and *Walter A. Raymond* for appellant in Case No. 37679.

*Charles M. Miller* for respondent.

CLARK, J.—Plaintiff brought suit in the Circuit Court of Jackson County against his employer, the Marshall Company, its sales manager, Calkins, and its store manager, Cowan, to recover for injuries alleged to have been caused by carbon monoxide poisoning suffered by plaintiff in his employment. At the close of the evidence plaintiff took an involuntary non-suit as to Calkins. The jury returned a verdict in favor of Cowan, and against the Marshall Company for $10,000. The Marshall Company appealed and plaintiff appealed from the judgment rendered in favor of Cowan. In this court the two appeals have been separately briefed and given separate numbers, 37678 and 37679, but they are both treated in this opinion.

Plaintiff's petition alleged that he was employed by the Marshall Company in its retail store from some time in July to December

27, 1938, his duties being to install parts and accessories on automobiles; that Cowan was employed by the Marshall Company as its store manager, at all times acting within the scope of his employment, with complete supervision and control over said store and employees, including plaintiff; that plaintiff was required to do his work in the rear room of the store, working from nine to ten hours a day and sometimes on Sunday; that automobiles were constantly being driven in and out of the room where plaintiff worked; that, as a necessary incident to plaintiff's work, motors were caused and permitted to run thereby emitting poisonous gases, vapors and fumes, in harmful quantities and under harmful conditions, so as to poison the air in plaintiff's place of work; that such condition existed during the entire time of plaintiff's employment; that plaintiff inhaled and absorbed such poisonous gases, etc., and as a result thereof "did contract a severe form of occupational disease incident and peculiar to plaintiff's employment;" that plaintiff's injury was caused by defendants' negligence as follows: (a) failure to furnish a safe place to work, in that defendants failed to furnish any reasonably adequate means of ventilation; (b) failure to equip the place of work with blowers and suction fans to carry off the poisonous gases, etc.; (c-d) failure to warn plaintiff; (e) that they assured plaintiff that the gases were harmless; (f) that they ordered plaintiff to close the ventilators and doors and to work with them closed; (g) that they failed to have plaintiff examined by a licensed physician. The petition sets out the injuries which plaintiff claims to have received and prays judgment for $25,000.

The Marshall Company first filed a general demurrer which was overruled. Then it filed an answer, containing a general denial, a plea which it designated as assumption of risk, and a further plea that it was at all times operating under the Missouri Workmen's Compensation Act and that, if plaintiff was injured in the manner alleged, the same was governed by that Act and the circuit court was without jurisdiction.

Defendant Cowan filed a general denial.

In our view, the appeal of the Marshall Company will be determined by the answer to one question: do the pleadings and proof bring this case under the provisions of our Workmen's Compensation Act?

The proof shows that the Marshall Company did not accept the occupational disease provision of that Act, but did accept its other provisions. Plaintiff, not having rejected the Act, is held to have accepted it. Therefore, if plaintiff's injuries were due to an accident, or series of accidents, rather than to an occupational disease, the primary exclusive jurisdiction would be in the Compensation Commission and not in the circuit court.

Plaintiff offered evidence tending to show that he was in good

health when he commenced to work for defendant; that his working place was a room about fifty by sixty feet with a twelve foot ceiling; that there was a door opening into the sales department, and two large doors, one opening into a street and the other into an alley on the opposite side of the room, to permit entrance and exit for automobiles; near the ceiling in one wall were two ventilator openings about ten inches square and three similar openings in the opposite wall; there were no suction or blower fans; in the summer these doors were usually kept open; when the weather began to get cooler, plaintiff testified that Cowan instructed him to close the ventilator openings, which he did and also to keep the large doors closed to prevent the passage of cold air into the sales department; however, plaintiff said that he was free to open the large doors and did open them when he wanted to, but they could be kept open for short intervals only during the cold weather; that running motors constantly emitted gases in the room. Plaintiff further testified that, beginning about October first, he would become weak and dizzy and have headaches while at work and that these conditions gradually increased in frequency and severity; that on December 27, a very cold day, he became so ill that he was compelled to quit work; that he started to his living rooms which were on the floor above his working place; that when he reached the top of the stairs he became unconscious and was taken to a hospital where his illness was diagnosed as carbon monoxide poison.

Plaintiff filed a claim under the Compensation Act, and after receiving several payments, voluntarily withdrew the claim and brought suit.

There was abundant evidence that carbon monoxide gas is generated by the operation of automobiles and that such gas is common in garages. There was substantial, though disputed, evidence that plaintiff's injuries were due to the inhalation of such gas, but the evidence in this case fails to establish that plaintiff's injuries constitute an occupational disease. On this point two physicians testified for the plaintiff and two for the defendant.

Dr. Klepinger, for the plaintiff, testified that he first examined plaintiff in February, 1939, and many times afterward. From such examinations and from the history of plaintiff's ailment, recited in hypothetical questions, he gave his opinion that plaintiff was suffering from carbon monoxide poison. Plaintiff attempted, and claims to have succeeded, in proving by this witness that plaintiff's injuries were due to the inhalation of gas from day to day over a period of time rather than to one exposure on December 27. That portion of his testimony is as follows:

"Q. Assuming that Mr. Tindall when he first began to suffer headaches while working for this defendant concern, they were slight in character, and as days went on and as he continued to work and as he did more work installing heaters, the headaches became more fre-

quent with greater severity, and they began to occur earlier in the morning, what is your opinion as to whether or not those exposures from day to day, with the result that I have outlined, which you are to assume as true, have to do with the ultimate exposure on the 27th resulting in unconsciousness?''

Defendant's attorney objected to the question because it did not assume all the facts, to-wit: ''It does not assume the fact which your honor incorporated in his question that when he got out into the air his headaches and condition cleared up and he went back to normal.''

The court instructed the witness to assume that fact in addition to the facts stated.

''A. The mechanism is this: carbon monoxide forms a staple compound with the red blood corpuscle and destroys its function to carry oxygen, now that red corpuscle is out.''

An objection by defendant's counsel that this answer was an argument was sustained by the court. Then the witness said:

''A. I was just following the cause of why my opinion is that.''

Then the court had the question read and told the witness to answer the last part of it. His answer was the one word ''Yes.''

From the foregoing testimony we are unable to determine whether the witness was of the opinion that plaintiff's injury was due to an accumulation of poison over a period of time, or to the one exposure on December 27.

Dr. Feierabend, for the plaintiff, testified that carbon monoxide affects the red corpuscles so as to prevent them from carrying a sufficient supply of oxygen; that a small quantity of the gas has little effect as it is quickly eliminated when the patient is supplied with pure air; that all automobiles emit such gas and that a person driving in heavy traffic absorbs more or less of it; that unless a person absorbs enough gas to produce unconsciousness no particular damage will result; then the witness gave his opinion that the minute exposures that plaintiff had from day to day had little or nothing to do with his condition, and that the final exposure, when plaintiff received sufficient quantity of gas to cause unconsciousness, was the one exposure responsible for his condition.

Dr. Davis, for defendants, said there is such a thing as chronic carbon monoxide poison and a possibility that plaintiff may have had it, but the gist of his testimony is that he thinks plaintiff's condition is due to other causes; that usually a person exposed to such gas quickly revives on being removed to the open air. We quote the following portion of his testimony.

''Q. Now, do I understand your testimony to be, doctor, that if there is an exposure to carbon monoxide and the patient doesn't die, he gets well?

''A. Unless it is a terrific exposure and he is unconscious over a long period of time.''

Dr. Ogilvie, for the defendants, examined plaintiff at the hospital on December 27, 1938, and several times afterward; he caused a diagnosis of carbon monoxide poison to be placed on the hospital records "from the history that the man, while working on a car, servicing a heater, while doing this he was overcome with carbon monoxide gas, made unconscious;" but witness said he found no evidence of such poison from his examinations. He also said that the fact that plaintiff collapsed after he was out in the air indicated that the trouble was not carbon monoxide.

It is sometimes difficult to determine whether an injury is the result of an "accident" within the meaning of our Compensation Act which defines the term "accident" to mean "an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The said terms shall in no case except as hereinafter provided be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment." (Sec. 3695, R. S. Mo. 1939; Mo. Stat. Ann., sec. 3305, p. 8238.)

"An occupational disease is one which is the natural incident or result of a particular employment and is peculiar to it, usually developing gradually from long continued work at the employment, and serving to attach to the employment a hazard which distinguishes it from the ordinary run of occupations and is in excess of the hazard attending employment in general." Row v. Cape Girardeau Foundry (Mo. App.), 141 S. W. (2d) 113; Evans v. Chevrolet Motor Co., 232 Mo. App. 927, 105 S. W. (2d) 1081. See also Section 10211, Revised Statutes Missouri 1939; Mo. Stat. Ann., Sec. 13252, page 4803.

In Knaup v. Western Coal & M. Co., 342 Mo. 210, 114 S. W. (2d) 969, this court approved and adopted an opinion of the Kansas City Court of Appeals holding that an injury due to inhaling noxious gas in a mine, from day to day over a period of time, was not an "accident" within the meaning of the Kansas Compensation Law. We said that "a cause of action depends upon the interpretation of the law of Kansas. And the law of Kansas is what the Supreme Court of that state says it is." We then rested our decision on the case of Echord v. Rush, 124 Kan. 521, wherein it was held that a gradual and cumulative poisoning by the inhalation of noxious gas did not constitute an "accident" within the meaning of the Kansas Compensation Act. There was a dissenting opinion in the Echord case.

The Knaup case does not rule the present case, because it distinctly rests upon the interpretation of the Kansas law in the Echord case under a materially different state of facts. In the instant case there

was no substantial proof of gradual and cumulative poisoning. Rather the proof shows that, while on several occasions objective symptoms of poison appeared (headaches, dizziness, etc.) these symptoms disappeared when plaintiff left his working place and ▮▮▮ went into the open air. Then on December 27, a very cold day which prevented keeping the doors open as much as usual, plaintiff was overcome.

In Leilich v. Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, we held that carbon monoxide poison, suffered while changing an automobile tire in a closed garage with the motor running, was an "accident" under the Missouri Workmen's Compensation Act.

In Downey v. K. C. Gas Co., 338 Mo. 803, 92 S. W. (2d) 580, a workman received an injury to his eye from frequently wiping soot and dirt on same from his soiled hands over a period of four or five weeks. Division Two of this court held that the injury was not due to an occupational disease, but was compensable as an "accident" or series of accidents under our Compensation Act. The opinion reviews many cases and discusses the elements necessary to constitute an "accident."

Plaintiff seems to strongly rely on the case of Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S. W. (2d) 918, in which we held that pneumonia, contracted from working in a damp subbasement, did not constitute an "accident" under our Compensation Act, because it resulted from exposure in the ordinary course of the employment. We further said that many cases are to be found in which pneumonia was caused by a sudden traumatic injury clearly constituting an accident.

We think the Joyce case was correctly ruled on its facts, but furnishes no support to plaintiff's theory in the present case. In the Joyce case we said: "The courts of this State have also held that injuries or death caused by excessive heat or excessive cold to which a workman is exposed because of his employment to a greater degree than are the other members of the community are compensable under the Compensation Law. (citing cases.) On the other hand, in all of these cases there is present some abnormal and unforeseen condition in the employment arising more or less suddenly which can be pointed out as a definite positive factor of the compensated injury or death." Cases cited by us in that case indicate that if Joyce had contracted disease by being suddenly drenched with cold water we would have held the injury to be the result of a compensable accident. In the instant case while the evidence shows that noxious gases are common in garages, it was not shown that such gases are commonly present in such harmful quantity as to cause disease or injury. The evidence shows that when such gases do exist in harmful quantity it is due to shutting off the flow of air from the outside. That constitutes an unforeseen event, happening more or less suddenly and

violently and producing objective symptoms of an injury within the meaning of the Compensation Act. (Downey v. K. C. Gas Co., supra.)

Therefore, the exclusive original jurisdiction of plaintiff's cause of action is vested in the Workmen's Compensation Commission and the demurrer to the evidence, offered by the defendant Marshall Company, should have been sustained. It is unnecessary to discuss other points made by the parties or to review the authorities cited in support of them.

Plaintiff has appealed from the judgment in favor of defendant Cowan and assigns as error the giving of instruction "W," at the request of defendants, and instruction "Z" on the court's own motion.

Respondent urges that there is nothing before us except the record proper because plaintiff has filed no separate bill of exceptions in this appeal. However, as the original bill of exceptions has by leave of court been filed here, we will consider the case on its merits.

It is unnecessary to set out in full the two instructions complained of as plaintiff does not object to their form. Instruction "W," in part, told the jury that if they believed plaintiff's sickness was the direct result of his failure in the exercise of ordinary care to take reasonable means to avoid the gas—by opening the doors, etc., they should find for defendants.

As to instruction "W," plaintiff says it embraces the defense of contributory negligence which was not pleaded in the answers. As to the answer of defendant Cowan, plaintiff is correct for that answer was only a general denial; but the answer of the Marshall Company pleaded a defense in substantially the same language as instruction "W." True, this defense was designated assumption of risk, but it contained the elements of contributory negligence. The instruction was given at the request of both defendants. Plaintiff is not in a position to complain that it was improper as to one of them, because the instructions given at plaintiff's request required the jury, if they believed the facts hypothesized, to return a verdict against both defendants. The plaintiff's instructions did not authorize a verdict for one and against the other defendant.

Also, we think the defense of contributory negligence was available to defendant Cowan, although not pleaded by him, because the issue arose on plaintiff's own evidence. While plaintiff testified that he was on several occasions ordered to close the doors, he also said he was free to open them and did open them when he wanted to. He knew that gas and fumes caused his headaches and dizziness and that opening the doors gave him relief.

Even if the giving of instruction "W" was error, we think it was not prejudicial. In both appeals in this court plaintiff takes the position that the case is not entirely a respondeat superior case, and that some allegations of negligence are directed against the Marshall

Company alone.  That is true.  The only allegations of negligence in the petition authorizing a verdict against Cowan are "e" (negligent assurance) and "f" (ordering the doors closed).  Evidently the jury found in favor of Cowan on these specifications, and not on the issue of contributory negligence which would have required them to find in favor of the Marshall Company also.

Instruction "Z," given on the court's own motion, is the usual instruction on the form of verdict.  Plaintiff's objection is a conditional one, for he concedes that if the case is not solely a respondeat superior case, and we hold that it is not, the instruction is proper. There is no merit in the objection.

In his reply brief in the Cowan appeal, plaintiff cites the case of State ex rel. v. Hughes, 348 Mo. 319, 153 S. W. (2d) 40, "as bearing on the inapplicability of the Missouri Compensation Act." Plaintiff must have intended this citation to be considered in support of his effort to sustain the judgment against the Marshall Company.  We do not think that case has any bearing on any phase of the instant case. There we held, on certiorari, that a court of appeals decision holding that the injury itself may constitute the "accident" under the Compensation Act, is in conflict with DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S. W. (2d) 834, and Joyce v. Luse-Stevenson Co., supra.  That was the only point decided.

For the reasons stated, the judgment against the Marshall Company, No. 37678, is reversed and the judgment in favor of Cowan, No. 37679, is affirmed.  All concur.