235 S.W.2d 92 (1950)
SANFORD
v.
VALIER-SPIES MILLING CO. et al.
No. 28008.
St. Louis Court of Appeals, Missouri.
December 19, 1950.
Rehearing Denied January 19, 1951.
*93 Paul H. Koenig, and Thomas L. Sullivan, of St. Louis, for appellant.
F. X. Cleary, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Carter, all of St. Louis, for respondents.
BENNICK, Judge.
This is a proceeding under the workmen's compensation law, Secs. 3689-3766, R.S.Mo.1939, Mo.R.S.A. §§ 3689-3766, the appeal having been taken by the employee from the judgment of the circuit court affirming an award denying compensation.
The employee, Edward Sanford, had been in the general employ of the Valier-Spies Milling Company for some twentythree years when he filed his claim for compensation, alleging an injury to his lungs "after prolonged period of working in elevator where there was much grain dust".
It is conceded that the claim was based upon the occupational disease amendment, Sec. 3695(b), which was added to the act in 1931, Laws Mo.1931, p. 382, and which the employer had afterwards elected to accept.
The employer and insurer denied that the employee's condition was the result of an occupational disease for which recovery might be had.
After a trial before the referee upon the issue thus joined, the referee found that the employee was suffering from emphysema which had been brought about by an asthmatic condition of long standing; that the employee's condition had resulted from an allergy or sensitivity to wheat dust to which he had been exposed over a long period of time in his employment; and that because of such allergy or sensitivity on his own part, his condition was not compensable as having arisen out of his employment.
The employee filed his application for review by the full commission, and upon such review the commission affirmed the referee's denial of compensation.
The commission's own specific finding was that the employee had failed to prove that his condition had been caused or aggravated by an occupational disease.
From the award thus entered the employee appealed to the circuit court, which thereafter rendered judgment affirming the award. The employee's appeal to this court has followed in the usual course.
The evidence discloses that the employee entered the service of the employer on June *94 11, 1923. It appears that prior to that time he had had no type of lung or bronchial ailment. The little dust to which he had been subjected in his former employment did not "amount to anything".
It was undisputed that the work to which the employee was assigned upon being employed by the milling company exposed him to constant heavy concentrations of dust from the handling of wheat as it was brought into the plant. It was made clear that the dust of which he complained had come from the grain itself, and not from flour, with which he had seldom come in contact.
According to the employee, the dust had had a harmful effect upon him from the beginning; and in 1925, after two years on the job, he first consulted a physician, whom he visited very occasionally over a period of four years. He then followed a similar procedure with a second doctor, whom he saw once every five or six months until 1945.
Commencing with a mere cough, the employee's trouble had progressed to the point where, by 1945, he had a pain in his chest, experienced difficulty in breathing, and could hardly walk the distance of a city block without being compelled to stop two or three times.
Upon the employee's complaint of inability to work, the employer sent him to a Dr. Smith, who in turn referred him to Christian Hospital for an X-ray picture of his lungs. As a matter of fact, the employee was away from work from June 2, 1945, to February 5, 1946, during which period the insurer voluntarily paid him compensation in the total amount of $300. Upon his return to work he was not put back at his old job, but was assigned to the job of millwright helper, which was much lighter work than he had formerly done, and did not expose him to more than one-tenth of the dust with which he had been compelled to come in contact before.
On November 21, 1945, the employee was sent for examination by Dr. Charles W. Miller, a specialist in diseases of the chest, and on March 27, 1947, he went to Dr. A. J. Steiner, a physician of his own choosing, who likewise specializes in diseases of the chest. Since that time Dr. Steiner had seen the employee on the average of once a week up to the time of the hearing before the referee, which was on March 3, 1949.
Dr. Steiner testified as a witness for the employee, while Dr. Miller was called by the employer and insurer.
The substance of Dr. Steiner's testimony was that the employee was suffering from a condition known as emphysema, which involved an overstretching or overstraining of the air sacs in the lungs, and was the end result of a long standing asthma. With respect to the consequences of the disease, he explained that by reason of the increased size of the air sacs without a corresponding increase in the amount of circulation, less oxygen enters into the blood cells, so that the patient is compelled to breathe more rapidly in order to obtain the normal effect. All this puts an added strain on the heart, and impairs the patient's capacity to work.
Dr. Steiner testified that the wheat dust was the allergen that was responsible for the employee's asthma and resulting emphysema. By allergen is meant any substance capable of inducing a condition of allergy or specific hypersensitiveness. An allergy test from the dust which was present where the employee worked disclosed that the employee was quite sensitive to it. The inhalation of the dust had produced the asthma, which, according to Dr. Steiner, was not an uncommon thing in the milling industry, and was frequently referred to as miller's asthma. It was known, he said, that wheat contains moulds and fungi which are a common cause of asthma in people who are exposed to such type of dust. He further stated that persons who are allergic to wheat dust should never work where they would come in contact with it.
Dr. Miller testified that he had tested the employee for sensitivity to wheat itself as distinguished from wheat dust, and had found that he was not allergic to wheat. He thought, however, that the employee might well be allergic to wheat dust; and in his original report he had suggested that if the company would have the employee return for further examination, he would *95 test his sensitivity to that particular allergen. He stated that wheat products are notorious for producing an allergic reaction, and that from the employee's case history he had thought it inadvisable for the employee to continue working in the same department where he had worked before. In other words, because of the allergy he had spoken of, his recommendation had been that the employee be assigned to work away from the wheat dust. In his own examination of the employee by X-ray pictures and otherwise, he had found nothing in particular as positive evidence of asthma or emphysema, and his diagnosis had been made entirely from the history of the case.
From the evidence thus adduced, the question before us, considered from the broad aspects of the finding of the commission itself, is whether the employee failed to prove that his condition had been caused or aggravated by an occupational disease. But considered from the standpoint of the positive and specific finding of the referee, the question is whether, assuming that the employee is suffering from emphysema brought on by his inhalation of wheat dust over a long period of time in the course of his employment, such disease is to be held to constitute an occupational disease within the contemplation of the act, or whether, on the contrary, the disease is to be attributed to the employee's own personal allergy or sensitivity to wheat dust rather than to the employment itself. If the former, the employee should have had an award, but if the latter, the commission was right in denying compensation.
Our act neither defines an occupational disease, nor does it designate any specific diseases as being occupational in character. In this situation the term is to be regarded as having been employed in its ordinary and customary sense, that is, as referring to a disease which is the natural incident or result of a particular employment and is peculiar to it, usually developing gradually from the effects of long continued work at the employment, and serving, because of its known relation to the employment, to attach to the employment a risk or hazard which distinguishes it from the ordinary run of occupations and is in excess of that attending employments in general. Tindall v. Marshall's U. S. Auto Supply Co., 348 Mo. 1189, 159 S.W.2d 302; Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S.W.2d 323; Evans v. Chevrolet Motor Co., 232 Mo.App. 927, 105 S.W.2d 1081; Row v. Cape Girardeau Foundry Co., Mo.App., 141 S.W.2d 113; Renfro v. Pittsburgh Plate Glass Co., 235 Mo.App. 226, 130 S.W.2d 165; Vogt v. Lambert Pharmacal Co., Mo.App., 218 S. W.2d 788.
We see no escape from the conclusion that the employee's condition did not constitute an occupational disease within the meaning of the local act. This for the reason that the asthma or emphysema from which he suffered, even though brought on by the prolonged inhalation of wheat dust, and even though not uncommon among people engaged in the milling industry, was nevertheless not a natural result or incident of the employment itself, but instead, as all the medical evidence disclosed, was attributable to the employee's own individual innate sensitivity or allergy to the properties of wheat dust. As Dr. Miller aptly expressed the situation, "it was him and not his occupation" that was primarily responsible for his condition, and the employer "might work fifteen or fifteen hundred men in the same place he was and nothing would happen". Whether any other person would be affected in the same manner as the employee would depend upon whether he was allergic in the same manner as the employee. For a condition to amount to an occupational disease, it must be due to causes and conditions inherent in and characteristic of the particular employment, and it is not enough to show a right to compensation where it appears that the disease would not have been contracted except for the peculiar susceptibility of the individual worker. Vogt v. Ford Motor Co., Mo.App., 138 S.W.2d 684.
We are not aided by cases from other states, whose acts, differing from our own, arbitrarily designate certain diseases as occupational diseases, or whose courts, differing from our own, refuse to apply the test that the disease must be incident or peculiar to the particular employment. *96 State ex rel. Fisher Body St. Louis Co. v. Shain, 345 Mo. 962, 137 S.W.2d 546.
The judgment of the circuit court affirming the award of the commission should in turn be affirmed by this court, and it is so ordered.
ANDERSON, P. J., and McCULLEN, J., concur.