J. C. BRASSFIELD and Hazel Annette
Brassfield, his wife, Appellants,

v.

Ronald SEARS, Respondent,

Charles Russell Thornhill, Defendant.

No. 52547.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1967.

McCormick V. Wilson, Jefferson City,
for appellants.

Hugh Phillips, Camdenton, Allen, Wool-
sey & Fisher, Russell G. Clark, Springfield,
for respondent.

PRITCHARD, Commissioner.

In this rear-end collision case appellants contend that there was insufficient evidence to justify the contributory negligence instruction No. 7 submitting that "Plaintiff J. C. Brassfield suddenly slowed his automobile on the highway without first giving an adequate and timely warning of his intention to slow." It is further contended that there was not sufficient evidence to justify the submission that the alleged sudden slowing was negligent, and to justify a finding that Brassfield's alleged failure to have given an adequate and timely warning was the proximate cause of the collision. With respect to the latter contention it is said that the uncontroverted evidence shows that respondent, Sears, was not watching Brassfield's car, and would not have seen or heeded a warning whether it had been given or not given. "Furthermore, Sears was already aware that Thornhill (driver of the third car, a red Pontiac, at the scene) was out of control and interfering with traffic in the southbound lane."

The collision happened at 4:15 p.m. on November 30, 1963, on U. S. Highway 63 in Boone County, between Jefferson City and Columbia, Missouri, and about 9 miles south of Interstate 70. J. C. Brassfield, his wife, Hazel Annette (also a plaintiff), and their two children were driving southerly in a 1961 black Cadillac. Sears, in a 1963 white Cadillac, was behind and following the Brassfields. According to State Highway Patrolman Eugene Hancock, at the scene of the collision, which he investigated, the road is fairly straight. There is a hill, the top of which is 200 to 300 feet, to the north of the scene, which can be seen as one comes over the hill crest. Patrolman Hancock found the back end of Brassfield's Cadillac damaged, as was the front end of Sears' Cadillac. There were skid marks 72 feet in length behind Sears' Cadillac and leading up to it. He found debris in front of it, and on the shoulder, the biggest part in the western or southbound lane. He determined that the Thornhill car made tire marks on the shoulder and ditch on the east

side of the highway, which marks went down the ditch for 160 feet, back on the pavement to 3 feet across the center line, then back into the northbound lane again. Hancock talked to Sears who said, "the red car crossed the road and this car (Brassfield's) suddenly stopped in front of me and I hit him." Brassfield told Hancock, "As I came down a hill, a red Pontiac ran off the road and came about a—across the road into my lane and I applied my brakes and this car behind hit me." Hancock could not determine whether there were any skid marks made by the Brassfield car.

Steven Hedderich was a witness to the occurrence. He saw the red Pontiac leave the pavement on its east side then go across the highway. Two cars were then approaching him around the curve and down the hill. He saw both approaching cars "take to the shoulder" and heard the crash. He did not see the Pontiac come into contact with either of the other two cars. When he last saw Brassfield's car it was still moving; it went out of his vision and he could see the Sears' car coming, but could not say how far behind Sears was from Brassfield's car.

J. C. Brassfield testified he was traveling south on the highway at 45 to 50 miles per hour, and saw the Pontiac run off the pavement in front of him. "Immediately I applied my brakes lightly, throwing my wife and children all over the car and proceeded to turn off to the right on my side of the road to avoid hitting this red Pontiac. And as I did so I was hit from the rear." He did not get his car stopped before he was hit. Thornhill was coming to his left side when he was hit from the rear. He then coasted to a stop some 100 yards down the hill. Sears stated to him that he was watching the red car go back and forth, skidding, and did not realize Brassfield's car was in front of him. Sears told Brassfield he didn't see him.

Sears testified that he saw the Brassfield car ahead of him as he came over the crest of the hill; he had not seen it prior

to that time. He saw a line of traffic coming from the other way, and the red car go off the road and follow the shoulder quite some distance. "I didn't realize that Mr. Brassfield was coming to a halt until it was too late. But Thornhill did whip back and on to the highway, his front wheels crossed the center line and there he stopped, and Mr. Brassfield's car stopped before he got to the Thornhill car and as I said, I was concentrating on the Thornhill car." Sears further testified that he did not observe the Brassfield car until he (Sears) applied his brakes. He did not know for sure if the Brassfield car was stopped, but Brassfield said he had and that he had seen in his rearview mirror that Sears couldn't avoid hitting him, so he released his brakes. On application of his brakes Sears skidded 70 feet. At the time his car began to make skid marks was when he applied his brakes. He came approximately 225 feet toward the Brassfield car before he applied his brakes. After he had (first) seen the Brassfield car ahead, he was watching the car in the other lane. When he first saw Brassfield in front of him, it was at such a distance and he (Sears) was traveling at such a speed he could have stopped his car short of hitting him if he had watched him. "A. Yes, as I came over the hill, but like I said, my eyes were focusing on the car on the highway. Q. If you had watched, what was going on in front of you, you could have seen him? A. Yes. Q. And you could have stopped? A. Right." Sears did not see Brassfield's brake lights, and they could have been seen. "I don't believe they were on, but I can't say they were not." At the time of the impact, Thornhill was then crossways in the road, "maybe the length of one car ahead of Mr. Brassfield yet." There was, according to Sears, enough passageway in Sears' lane of travel for Brassfield to go forward and not strike the Thornhill car.

There is nothing more firmly entrenched in the law than the requirement that issues submitted in instructions to the jury be supported by evidence from which the jury could reasonably find such issue.

"An instruction which is not supported by the evidence is erroneous in that it is misleading and confusing. (Citing cases.)" Hart v. Midkiff, Mo., 321 S.W.2d 500, 508 [10]. The adoption of Missouri Approved Instructions, effective January 1, 1965, after which this case was tried, certainly has not changed the law in this respect. Committee's Comment to MAI 28.01, p. 230, "Contributory negligence is an affirmative defense which must be pleaded and proved by the defendant. Mo.R.Civ.P. 55.10. Submitting such a defense when not supported by the record is, of course, reversible error." While there is evidence here that Brassfield "suddenly stopped" in front of Sears (per Patrolman Hancock's testimony as to what Sears told him, and the inference from Brassfield's testimony that although he applied his brakes "lightly" his family was thrown all over the inside of his car), completely lacking is substantial evidence that Brassfield's sudden stop was done without an appropriate signal as required by § 304.019, RSMo 1959, V.A.M.S. Instruction No. 7 submits that Brassfield "suddenly slowed his automobile on the highway without first giving an adequate and timely warning of his intention to slow," and further requires the jury to find that this assignment (and disjunctively that of failure to keep a careful lookout) was negligence directly causing or contributing to cause injury and damage to Brassfield. Sears' testimony (by which he is bound if not explained or corrected, Taylor v. Vestal, Mo., 304 S.W.2d 820, 823 [1, 2]) is that as he came over the top of the hill he saw Brassfield's Cadillac ahead. His attention was then directed to the careening Thornhill car. He didn't realize Brassfield was coming to a halt until it was too late. He was concentrating on Thornhill, and he did not observe Brassfield until he (Sears) applied his brakes 70 feet back. Whether or not Brassfield failed to give a signal of any kind of his intention to stop as Sears was approaching over some 225 feet to his rear is not in evidence. Sears' testimony is that he did not see Brassfield's brake lights which could have been seen.

His answer, "I don't believe they were on, but I can't say they were not," is not substantial evidence that Brassfield gave no timely and adequate signal of intention to stop or slow. Under his own testimony he was not observing the car ahead until it was too late to stop or slow and avoid hitting him. There was thus no evidence to justify the submission of slowing without an adequate and timely signal, and the giving of Instruction No. 7 was therefore reversible error. In Pitha v. St. Louis Public Service Company, Mo., 273 S.W.2d 176, 179, an order granting plaintiff a new trial was set aside, and the judgment for defendant was reinstated because plaintiff did not adduce or offer proof that a bus operator ahead did not make an arm signal, "[T]he record wholly fails to show that any evidence of failure to give a warning, or a reasonable, adequate and timely warning was either offered by plaintiff or excluded by the court." 273 S.W.2d 179 [1–4]. See also Seney v. Trowbridge, 127 Conn. 284, 16 A.2d 573, 575 [1–4], where plaintiff was held not to have made a case because she adduced no proof that defendant failed to give a signal of her intention to turn in front of plaintiff's passing vehicle; Heimer v. Salisbury, 108 Conn. 180, 142 A. 749, 751 [3], where there was no evidence that defendant did not give a signal for a left turn, but simply that plaintiff *saw* none. The defendant's evidence was that he gave the signal "before reaching the intersection." "On this state of the evidence it would have been impossible for the jury to decide that the signal was not given seasonably."

Sears' cases are distinguishable. In White v. Rohrer, Mo., 267 S.W.2d 31, 34, defendant *saw* plaintiff ahead applying his brakes, but "I didn't see any stop light at all." In Crawford v. McNece, Mo., 388 S. W.2d 809, the issue held for the jury of warning turned upon defendant's evidence that the plaintiff's stop lights were dirty and could not be seen. But there, defendant had been following plaintiff for some distance, saw her stopped and "slammed" on his brakes, but claimed that he saw no signal of

any kind from plaintiff's car. In Lafferty v. Wattle, Mo.App., 349 S.W.2d 519, a passenger in the following Chevrolet saw the overtaken truck first 100 yards down the road; next upon the setting of brakes by the Chevrolet; then about 20 yards ahead and with a hitchhiker 5 to 10 yards from the truck and running toward it, "'From what I could see it was almost stopped.' He said that he saw no lights on the rear of the truck, in fact no lights at all. (On cross-examination he said he wasn't looking for any taillights)." 349 S.W.2d 523. It was said in the Lafferty case, "A negative fact ordinarily must be demonstrated by negative evidence. Negative evidence that 'I did not hear' or 'did not see' is positive, probative evidence where it is probable or 'reasonably certain' that the witness could and would have seen or heard had the event occurred. (Citing cases.) The test is as to whether it is probable or reasonably certain that the witness would have seen and heard had it happened. Of course, this depends upon the proximity and position, the attention or lack of attention of the witness, and the surrounding circumstances. (Citing cases)." 349 S.W.2d 527 [14–16]. It was held that the witness was to the rear of the truck and facing forward and was in a position to see a taillight had it been visible, and that evidence was not without probative effect. No such facts here exist. Sears had his attention fastened upon the Thornhill car, and what happened with respect to Brassfield either giving or not giving a signal of his intention to stop or slow during the time that Sears had him in view is not in evidence. There was no evidence that he was looking at Brassfield's car prior to the time he (Sears) applied his brakes from which it could be deduced that no signal, *or a timely and adequate signal* was given. Such must be supported by the evidence to justify its submission. See Tucker v. Blankenmeier, Mo., 315 S.W.2d 724, where it was held reversible error to omit from an instruction the additionally required elements of a reasonably adequate and timely warning of an intention suddenly to reduce

the speed of an automobile ahead of defendant (who was observing plaintiff's car and saw no signal). In Woods v. Chinn, Mo.App., 224 S.W.2d 583, also relied upon by Sears, there was a sudden stop by defendant 50 feet ahead of the following plaintiff. The issue of defendant's negligence in failing to give the statutory signal of his intention to stop (there was evidence from defendant that he gave no signal) was for the jury. The issue as to plaintiff's contributory negligence, was whether he should have applied his brakes rather than swerving to avoid the collision, held also for the jury. There was no issue of a timely and adequate signal of intention to stop.

■ The evidence does not conclusively show that an emergency existed in front of Brassfield such as would excuse him as a matter of law of contributory negligence. Although Thornhill was apparently out of control ahead, and crossed the center line, yet, according to Sears, Brassfield had sufficient room to pass Thornhill in the southbound lane. Although Thornhill's acts most probably created an emergency confronting Brassfield, an instruction on that defense is not now authorized. MAI 1.04. Certainly the facts of Thornhill's actions would be arguable to the jury as bearing upon Brassfield's contributory negligence if there was evidence to support that defense. His argument that MAI 28.01 upon contributory negligence should have been modified to include a reference to the sudden emergency is not persuasive. The reason that sudden emergency instructions are excluded is that the language is argumentative, and as here applicable, "The jury has already been instructed that the standard of care is measured by what would be done by others similarly situated." Committee's Comment to MAI 1.04. "Negligence" was so defined in Instruction 9–A given here by the court. Brassfield's contention in this respect is ruled against him.

■ There is yet another reason, urged by Brassfield, why the giving of Instruction No. 7 upon his contributory negligence in failing to give an adequate and timely warning of his intention to slow was error. As above set forth, there was no substantial evidence that Sears was watching Brassfield's car as he approached from the rear. He would not have seen a statutory warning of Brassfield's intention to slow had it been given or not given. The assigned omission of that duty in Instruction No. 7 could not therefore have been a proximate cause of the collision. Compare Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, where the facts showed that Gerdeman, the driver of the third car behind the first in which plaintiff was a passenger, would not have seen an arm signal of the driver (Kunzler) of the first car, because Gerdeman was not looking—he was looking at the flood waters as the string of cars crossed the bridge. "The mere fact that injury follows negligence does not necessarily create liability. A causal connection must be established between the negligence charged or submitted and the loss or injury sustained, such that the injury would not have happened but for the negligence, and also that the negligence was not only a cause but was a proximate cause. (Citing cases and authority)." 274 S.W.2d 245 [2]. It was held in Gerdeman that the submitted negligence of Kunzler's failure to give an arm signal had to be seen and acted upon to be effective; that under all the evidence Gerdeman would not have seen such signal had it been given; and that a finding of causative negligence on Kunzler's failure to give an arm signal would rest in guesswork, speculation and conjecture. Such is the case here, and Brassfield's further argument that Sears was aware that Thornhill was out of control, and a statutory signal would have informed him of nothing more, and he would have to stop, need not be considered.

Sears suggests that any error in the giving of Instruction No. 7 on Brassfield's

contributory negligence could not be prejudicial because it would have been reflected by the jury returning a verdict in favor of Hazel Annette Brassfield (for her personal injuries and loss of her husband's services), against Thornhill and also against Sears. "Due to the fact that on the claim of Hazel Annette Brassfield the jury's verdict was in favor of Respondent Sears it must be concluded that the jury found no negligence on the part of Respondent Sears." And " * * * [T]he fact that the jury returned a verdict in favor of Respondent Sears and against both appellants clearly reflects that it was not misled by Instruction No. 7 and that Instruction No. 7 had no effect upon its verdict."

■ The rule that error in the giving of instructions may be cured by the verdict of the jury is not applicable to this case. It is not conclusive, and it does not clearly appear, as contended, that the verdict against Hazel Annette Brassfield could only have been based upon a finding that Sears was not negligent. Her instructions not only hypothesized his negligence under the rear-end doctrine, but also required the finding that she suffered personal injuries and loss of services by reason of her husband's injuries. It is impossible to know if the verdict against her was rendered upon a finding of no negligence upon Sears' part, or that she suffered no damages. Tindall v. Marshall's U. S. Auto Supply Co., 348 Mo. 1189, 159 S.W.2d 302, 307 [7], does not aid Sears. In that case there were different assignments of negligence against codefendants, and it was held that there was no prejudicial error in the giving of a contributory negligence instruction at the request of both defendants because "Evidently the jury found in favor of Cowan on these (different) specifications, and not on the issue of contributory negligence which would have required them to find in favor of the Marshall Company also." In Taylor v. Riddle, Mo., 384 S.W.2d 569, an instruction directed a verdict for defendants Ford and Corum, but not against Riddle and Fry, if the jury found Ford and Corum did not place warning signals when stopped on the highway. Riddle and Fry claimed that the instruction erroneously injected that charge of negligence against them. The court held that since the verdict was against Ford and Corum, there could be no resulting prejudice to Riddle and Fry. In Skadal v. Brown, Mo., 351 S.W.2d 684, the verdict was upon Count I of plaintiff's claim for personal injuries, but nothing was given by the jury upon Count II for property damage. Defendant contended the verdicts conflicted with Instruction No. 1, which directed a verdict upon both counts. The court rightly held that the verdict was that there was no property damage incurred, but on the issue of negligence it showed an intent to find for plaintiff. The Skadal case is merely illustrative of a jury's prerogative to find no damages where it could also find negligence to exist, precisely the case here. In Gorman v. A. R. Jackson Kansas City Showcase Works Co., Mo.App., 19 S.W.2d 559, plaintiff's verdict-directing instruction required a finding that the truck driver was an employee of both defendants, whereas there was no evidence to support a finding that defendant Gresafi was his employer. The verdict was in favor of Gresafi and against the showcase company, and it was held that as far as it was concerned the requirement in the instruction that the jury find the truck driver was the servant of Gresafi was of an immaterial fact and would have been harmless error. Neither these cases nor others cited by Sears hold that where a verdict is rendered upon either of two possible findings—damage and liability—it is conclusive that such finding was made upon either. In Jones v. Smith, Mo., 372 S.W.2d 71, 78 [10], the court considered the prejudicial effect of an erroneous contributory negligence instruction. It was asserted that even if the instruction was erroneous, the error was nonprejudicial because it was evident that the jury determined the

case on the basis of defendant's counterclaim instruction and not on the issue of contributory negligence. It was said, "However, there is no reason to assume that the jury first considered that issue (the counterclaim). * * * Certainly, there is no reason to presume that the jury followed one or the other of the courses available to them." See also Wright v. Quattrochi, 330 Mo. 173, 49 S.W.2d 3, 8 [8]; Kinney v. National Newspaper Ass'n, 193 Mo.App. 340, 183 S.W. 1086, 1088 [4], where plaintiff contended that the verdict was manifestly for the right party and notwithstanding erroneous instructions the verdict should be affirmed, and it was said, "But the verdict may have been rendered on that part of the negligence covered by the instruction which the Supreme Court has ruled was not tendered as an issue in the petition. In such case, the rule claimed by plaintiff cannot apply"; and see 5A C.J.S. Appeal & Error § 1773(1), p. 1248, "On the other hand, the judgment must be reversed where it is impossible to tell whether the verdict was based on an erroneous instruction, * * *."

■ Both Mr. and Mrs. Brassfield say that the granting of an interlocutory judgment of default against the nonappearing defendant Thornhill, was prejudicial error. If so, neither can complain as that judgment was granted at their request and the trial court was thereby led or induced to commit the alleged error, if any. Moore v. St. Louis Public Service Co., Mo., 251 S.W.2d 38; Shaffer v. Sunray Mid-Continent Oil Company, Mo., 336 S.W.2d 102.

The error in Instruction No. 7 was applicable only to the claims to relief of J. C. Brassfield. No other error than the granting of the interlocutory judgment against Thornhill is urged as to Hazel Annette Brassfield. As to her, the judgment is affirmed; as to J. C. Brassfield, the judgment is reversed and his case is remanded for new trial upon Counts I and III of his petition.

BARRETT, C., not sitting.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.