FRANK SHELTON v. WOLF CHEESE COMPANY, a Corporation, Appellant.—93 S. W. (2d) 947).

Division One, April 23, 1936.

*Culver, Phillip, Kaufmann & Smith* for appellant.

*Meyer & Imbersteg* and *Horace Merritt* for respondent.

FERGUSON, C.—This is an action for damages for personal injuries sustained by plaintiff Frank Shelton, on the night of December 2, 1932, when he was struck by an automobile, driven by D. R. Reid. The casualty occurred near the southeast corner of the intersection of Twelfth Street and Mitchell Avenue in St. Joseph, Missouri, as Shelton, a pedestrian, was attempting to cross from the south to the north side of Mitchell Avenue. Emerson Reid, a brother of D. R. Reid, the driver, was the owner of the automobile. D. R. Reid was an employee of the Wolf Cheese Company, a corporation, which conducted a business in St. Joseph. This action was against Emerson Reid, the owner of the automobile, and the Wolf Cheese Company, as defendants. On the trial of the case, in the Circuit Court of Buchanan County, plaintiff took a nonsuit as to defendant Emerson Reid, at the conclusion of the evidence on the part of the plaintiff, but the case was submitted to the jury as to the other defendant, Wolf Cheese Company. The jury returned a verdict for defendant company. Plaintiff's motion for a new trial was sustained on the ground, specified of record, that, "the court erred in giving Instruction 'G' on the part of defendant." The defendant company thereupon appealed from the order granting a new trial and as the amount of damages asked exceeds $7500 we have jurisdiction of the appeal.

Appellant does not contend here that the instruction specified in the order granting a new trial, as ground therefor, was not erroneous but rests its appeal upon the proposition that, under the evidence, a submissible case was not made and that the trial court erred in refusing its instruction, in the nature of a demurrer to the evidence as a whole, directing a verdict in its favor. If this contention is sustained and upon the whole evidence plaintiff was not, as a matter of law, entitled to have the case submitted to the jury it follows that error, if any, in the instruction is immaterial, for "if plaintiff has no case, he cannot be hurt by erroneous instructions." [Barr v. Missouri Pac. Railroad Co. (Mo.), 37 S. W. (2d) 927; Allen v. Larabee Flour Mills Corporation, 328 Mo. 226, 231, 40 S. W. (2d) 597, 600; Bello v. Stuever (Mo.), 44 S. W. (2d) 619; Chappee v. Lubrite Refining Co., 337 Mo. 791, 85 S. W. (2d) 1034; Traner v. Sphalerite Mining Co., 243 Mo. 359, 148 S. W. 70.]

The petition alleges several acts of negligence in the operation of the automobile by D. R. Reid as the proximate cause of plaintiff's injuries. The case was submitted on excessive speed, driving to the left of the center of the street and failure to warn. The defendant cheese company, as appellant, does not contend that there was no substantial evidence tending to show negligence on the part of the driver Reid, but says there was no competent, substantial evidence adduced tending to show that at the time plaintiff was

struck and injured D. R. Reid was driving the automobile upon or in connection with, or in furtherance of, its business, or in its behalf, or in the course of his employment by it. We shall therefore refer but briefly to the evidence relating to the manner in which the casualty occurred.

Twelfth Street, a north and south street, in the city of St. Joseph, is intersected by Mitchell Avenue, an east and west street. A telephone pole from which a guy wire ran to the ground stood a short distance east of the southeast corner of the intersection. Plaintiff testified that about eight o'clock the night of December 2, 1932, he was struck by the automobile as he was walking north across Mitchell Avenue, along the east side of Twelfth Street; that at the time he was struck he "was over to the north side of Mitchell," within "about 15 feet of the north side of Mitchell" and "the car came from the west;" that before going into Mitchell Avenue he "looked east and west" and saw two cars "east of me and one west" which "looked to be about a block away." The width of Mitchell Avenue is not stated. Plaintiff's witness Shea stated, that he was walking east on the south side of Mitchell Avenue and on the west side of Twelfth Street; that as he reached the west side of Twelfth Street he "heard the brakes squeak, looked that way," and "saw him (Shelton) roll out in the street;" that the automobile was stopped with the front wheels over the curbing on the south side of Mitchell and the back wheels in the street; that the automobile broke the guy wire on the telephone post and stood "headed southeast;" that as the automobile went through the intersection it "was about in the middle of the street" and "going in the neighborhood of 45 or 50 miles an hour." As noted this occurred the night of December 2, 1932. The driver D. R. Reid died approximately one month thereafter, January 3, 1933. Three of the other occupants of the automobile (a Plymouth sedan), called as witnesses for defendant, testified in substance; that D. R. Reid was driving the automobile east on Mitchell Avenue; that as he neared Twelfth Street he slowed up and as he entered and crossed the intersection he increased the speed so that when he reached the east side of Twelfth Street the automobile "was traveling 20 to 25 miles an hour;" that the automobile was traveling south and to the right of the center of Mitchell Avenue, the right side of the automobile being within three or four feet of the south side of the avenue; that the automobile had passed the sidewalk on the east side of the intersection when plaintiff walking "rapidly" north suddenly came into the street from behind the telephone pole and about ten feet directly in front of the automobile; that Reid "put on the foot brake and also the emergency brake and at the same time turned the car" to the right and over the south curb, striking and breaking the guy wire of the telephone pole;

that the "left front part" of the automobile struck plaintiff; and that the automobile stopped in about the position described, supra, by plaintiff's witness Shea.

The undisputed evidence is, that D. R. Reid, a single man, age about forty-seven, lived at the home of his brother Emerson Reid. Mr. and Mrs. Emerson Reid and Mr. and Mrs. Schaffer, Mrs. Schaffer's son, "Billy" Shane and D. R. Reid resided at the same house, 2762 Jackson Street, in St. Joseph. Both Emerson Reid and Schaffer were employed but neither was employed by defendant Wolf Cheese Company nor so far as the record shows ever worked for that company. D. R. Reid entered the employ of the cheese company in April, 1932, and was thereafter regularly employed by the company until his death in January, 1933. It seems the company carried on a wholesale business. D. R. Reid was a "truck salesman." He drove a "refrigerator truck" stocked with the company's products over a regular assigned route, making daily calls on stores and retailers in the territory assigned to him. He would call at stores and retail markets on his route ascertain the needs, in that line, of the merchant or dealer and make immediate delivery from the truck of the products or merchandise desired. The truck was owned by the company which operated four of these refrigerator trucks at St. Joseph. On December 2, 1932, a Mr. and Mrs. Lay and their son, residents of Jackson, Missouri, were visiting at the Reid-Schaffer home in St. Joseph. Mrs. Lay is a sister of Emerson and D. R. Reid. Present at supper that evening at the Schaffer-Reid home were Mr. and Mrs. Lay and their young son, Mr. and Mrs. Schaffer and Mrs. Schaffer's son, Billy, age fourteen, Mr. and Mrs. Emerson Reid and D. R. Reid. For several months D. R. Reid had been "keeping company" with a Miss Geraldine Phillips who resided with her mother at the Charleston apartments in St. Joseph. Emerson Reid as a witness spoke of Miss Phillips as D. R. Reid's "sweetheart." The evidence is that D. R. Reid and Miss Phillips "had dates" in the evenings, "frequently" or several times each week. After supper at the Schaffer-Reid home D. R. Reid called Miss Phillips by telephone and asked permission to bring his sister Mrs. Lay to the Phillips' apartment "to meet" Miss Phillips. He then took Emerson's automobile (Plymouth sedan) and drove with his sister Mrs. Lay, her little son and "Billy" Shane to the Phillips' apartment where they visited for awhile. Emerson Reid, called as a witness by plaintiff, stated that at the time D. R. Reid did not ask permission to take the sedan and that he did not know he had done so until after he had left for the Phillips' home; that he (Emerson Reid) owned the automobile and had driven in it from his place of work that evening; that, however, D. R. Reid "had been driving the car right along;" that D. R. Reid "understood he could have

the car any time" and "drove it as much as I did." After D. R. Reid, his sister Mrs. Lay, and the two boys had visited for awhile at the Phillips' apartment it was suggested that Mrs. Phillips and Miss Geraldine accompany them to the Schaffer-Reid home and spend the evening there. The invitation was accepted and the party entered the automobile to drive to the Schaffer-Reid home. D. R. Reid, Miss Geraldine and "Billy" Shane were seated in the front seat, D. R. Reid driving, and Mrs. Phillips, Mrs. Lay and Mrs. Lay's son in the rear seat. It was while thus enroute to the Schaffer-Reid home, at about eight o'clock that night, that the automobile struck and injured plaintiff. After plaintiff had been taken to a hospital in an ambulance D. R. Reid and his party drove to the Schaffer-Reid home, reported the matter to Emerson Reid and he and D. R. Reid drove, in the automobile, to the Central Police station where a report was made, then to the hospital to see and inquire about plaintiff and thence to the Schaffer-Reid home. D. R. Reid did not again leave the Schaffer-Reid home that night.

Plaintiff's witness Shea testified, that after the accident he "helped get the car off the curb" and that he "observed some articles in the car," "some packages" but "did not observe any markings on the packages." Carl J. Brath who was manager of the Cheese Company at St. Joseph from March 1, 1932, to May 1, 1933, testified that D. R. Reid's work (and that of the other truck salesmen) "was finished" daily by five-thirty or six o'clock in the evening; that the truck was reported in and stored for the night each day by such time; that the only way the company sold and distributed any merchandise locally was by a salesman calling with the refrigerator truck at the place of business of the merchants on his route, ascertaining their needs and making immediate delivery from the truck; that he "never knew of Reid, or any other truck salesman, working at night, taking orders or delivering products either with or without his truck, or in any other manner, after six o'clock in the evening;" that D. R. Reid had no work of any kind to do for the company the night of December 2, 1932; that during the time he was manager he never knew or heard of Emerson Reid's automobile, or any other privately owned vehicle, being used by an employee of the company in connection with the company's business. Emerson Reid, called as a witness by plaintiff, described his brother's duties and work for the cheese company and stated that he "never knew of his brother doing any work at night" for the cheese company or in connection with its business and that he never "heard" or "knew" of D. R. Reid using his (Emerson Reid's) automobile in doing any work for the company. "Billy Shane" testified that there were no packages in the automobile "either front or back;" that no stop was made from the time they left the Schaffer-Reid

home to go to the Phillips' home until they arrived at the Charleston apartments; and that returning no stop was made "from the time we left the Charleston apartments until the accident." Mrs. Phillips and Miss Geraldine Phillips stated, that there were no packages in the automobile and that no stop was made until that made at the time of the accident. Miss Geraldine said she "had gone with" D. R. Reid "for several months;" that she was with him several evenings each week and that she "never knew of him having any thing to do in the evening for the company." These witnesses and Emerson Reid, Mrs. Emerson Reid, Mrs. Schaffer, and the company manager, Brath, neither heard any statement by, nor saw any act of, D. R. Reid tending to indicate that at any time that night he did or had anything to do for or on behalf of the cheese company or in furtherance of its business or that he intended to do anything that night in connection with his employment by that company. The manager, Brath, stated that the only information he ever had of D. R. Reid's whereabouts, what he did and what occurred on that night, was that given him the following day and subsequently by Reid himself.

Unquestionably thus far there is not so much as a scintilla of evidence tending to show that D. R. Reid at any time the night of December 2, 1932, after he took his brother's automobile, engaged in or undertook, or intended to do so, any mission, work, errand or transaction of any kind whatsoever in connection with or in furtherance of the business of the cheese company or his employment by it. ██ We come now to the sole evidence, admitted over the objection and exception of defendant cheese company, which plaintiff claims, standing alone as it does, makes out a prima facie or submissible case against the cheese company.

As noted D. R. Reid died January 3, 1933. So far as the record shows or indicates apparently no claim of liability was made against the cheese company nor was there so much as an intimation of liability on its part. This action was filed March 17, 1933. Liability of the cheese company was admittedly for the first time inspired and conceived on March 15, 1933, in the manner we shall presently relate. Plaintiff's attorney who filed, appeared in, and actively conducted, the trial of this case on behalf of plaintiff took the witness stand and testified; that on March 15, 1933, plaintiff Shelton was in his office and told him that "he (Shelton) had been told this man (D. R. Reid) at that time (evidently intended to be construed as referring to the very time of the accident) was working for the Wolf Cheese Company;" that thereupon he told Shelton that "if that was true the Wolf Cheese Company was liable;" and that "at that time and for that reason" he called the office of the Wolf Cheese Company by telephone. As to this telephone conversation

the attorney testified: "I looked up the number of the Wolf Cheese Company in the St. Joseph Telephone Directory and found the number given as 6-1395," and "In our office we have an extension telephone used by the stenographer and before the conversation took place I instructed her to take down the conversation in shorthand as it came over the wire and this was done." The attorney witness then proceeded to read a typewritten record of the purported telephone conversation, prepared by the stenographer from her shorthand notes, by way of refreshing his memory. The stenographer followed him on the stand and testified that the typewritten record was a correct transcription of her shorthand notes of the purported telephone conversation and it was again read into evidence. The questions were propounded by the attorney, the answers were made by some unidentified person who purportedly answered the call for the telephone number of the Wolf Cheese Company and purportedly stated, upon the attorney's inquiry, that he was the manager. The record thus admitted in evidence on the part of plaintiff is as follows:

"Mr. Meyer asked 6-1395, please. A. Hello. Q. Wolf Cheese Company? A. Yes. Q. Please let me speak to the manager. A. This is the manager. Q. This is W. C. Meyer talking. We would like to know whether you had a D. R. Reid working for you on the 2nd of December, 1932? A. Yes, we did have. Q. Was he working for you at the time he injured Frank Shelton, December 2nd, 1932, with an automobile? A. Yes, he was working for us at that time. Q. What was he doing? A. He was out calling on some customers. Q. You are sure he was working for you at that time? A. Yes."

The attorney—witness said that the telephone conversation was the basis of the action against the cheese company, that is, that "those admissions" were "the reason" he "sued the cheese company." He stated that he thought the telephone conversation occurred "about 11 o'clock in the morning." The stenographer could not fix the time of day other than "it was in the morning." Carl J. Brath, to whose testimony we have heretofore referred, was the manager of the company at St. Joseph on that date. He denied that he ever had such conversation by telephone with the attorney, or anyone else, and stated that he was not at the company's office "any morning until 11:30 or 20 minutes of 12 o'clock" and that he regularly spent the morning "visiting merchants, checking different stores and making contacts."

Plaintiff claims this telephone conversation constitutes an admission against the company, and substantial evidence, that on the night of December 2, 1932, D. R. Reid was driving his brother's automobile in "calling on some customers" in the course of his work

for or employment by the company, and while so engaged struck and injured plaintiff. But if, as appellant claims, the telephone conversation is not competent as an admission against it then it is patent that there is no substanial evidence at all to be found in the record making a submissible case against the company for plaintiff's whole case against it rests upon this so-called admission. Appellant concedes that if the purported conversation had occurred personally between plaintiff's attorney and its agent and employee and was such as to be competent as an admission against it that the conversation would be admissible and does not contend that the fact alone that the conversation was held over a telephone, under the conditions shown by the evidence relating thereto, renders it inadmissible. The rule relative to the admissibility of telephone conversations following a call by telephone for the number of an office or place of business listed in an authorized telephone directory, a reply by someone, though such person is not identified by voice, purporting to speak for and represent the person, firm or corporation called, and the transaction of business, or proposals or statements made in such conversation, appertaining to the ordinary and usual business of the person called, or transactions pending between the parties, is stated and followed in numerous decisions by the courts of this State. [See Globe Printing Co. v. Stahl, 23 Mo. App. 451; Wolfe v. Mo. Pac. Ry. Co., 97 Mo. 473, 11 S. W. 49; Guest v. Hannibal & St. Joseph Railroad Co., 77 Mo. App. 258; Meeker v. Union Electric Company, 279 Mo. 514, 216 S. W. 923; Hood & Co., v. McCune (Mo. App.), 235 S. W. 158; Miller v. Phoenix Fire Ins. Co. (Mo. App.), 9 S. W. (2d) 672; Meyer Milling Co. v. Strohfeld, 224 Mo. App. 508, 20 S. W. (2d) 963; State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S. W. (2d) 462; 71 A. L. R. 5 (Annotation).]

If the replies of the party answering the attorney's telephone call be construed and considered as statements by an employee and agent of the company that on the night of December 2, 1932, and at the very time of the accident, Reid was driving his brother's automobile in the transaction of, or in connection with, some business of the company and in the course of his employment by it, nevertheless appellant contends they were not competent and admissible against it and that the trial court erred in admitting the telephone conversation over its objections and exceptions. The testimony of the attorney and his stenographer, so admitted, purported to repeat what they had heard an employee or agent of the company narrate over the telephone about certain conditions and incidents pertaining to the accident which had occurred approximately three and one-half months prior thereto. These statements are then relied upon as admissions against the employer. Whatever is said by an employee or agent of a private corporation in respect to and in the

course of any transaction, or in connection with and accompanying and relating to the performance of any act, in which he is then engaged, "or, in the language of the old writers, *dum fervet opus*," while he, acting within the scope of his employment or authority, is carrying on or transacting the business, or doing the work, of his master or principal, is admissible in evidence, as an admission or declaration, against the principal (the Latin phrase, supra, is translated "while the work glows" or "in the heat of action"); but "Declarations" or admissions "of an agent with respect to an act or transaction, made after the occurrence of the act or the completion of the transaction, are not provable against the principal. This rule is the basis for the exclusion of evidence of declarations of an agent that he had previously bound his principal by a contract, as well as for the exclusion of evidence of the admissions of a servant, whose alleged negligence caused injury to another, made long after the accident. Such statements are merely hearsay and like those of any other person, and cannot affect his principal. A rule that would allow an agent, after a transaction is closed, to admit away the rights of his principal, would be too dangerous to be tolerated." [1 R. C. L., p. 510, sec. 50; 2 Jones' Commentaries on Evidence (2 Ed.), sec. 944, p. 1741; McDermott v. The Hannibal & St. Joseph Railroad Co., 73 Mo. 516, Id., 87 Mo. 285; Bergeman v. Indianapolis & St. Louis Railroad Co., 104 Mo. 77, 15 S. W. 992; Koenig v. Union Depot Ry. Co., 173 Mo. 698, 73 S. W. 637; Redmon v. Metropolitan Street Ry. Co., 185 Mo. 1, 84 S. W. 26; St. Charles Savings Bank v. Denker, 275 Mo. 607, 205 S. W. 208; Lee v. St. Louis, Memphis & Southeastern Railroad Co., 112 Mo. App. 372, 87 S. W. 12; Carson v. St. Joseph Stockyards Co., 167 Mo. App. 443, 151 S. W. 752; Minea v. St. Louis Cooperage Co., 179 Mo. App. 705, 162 S. W. 741; Martin v. Woodlea Investment Co., 206 Mo. App. 33, 226 S. W. 650; Kribs v. Jefferson City Light, Heat & Power Co. (Mo. App.), 199 S. W. 261, 131 Am. St. Rep., note, p. 306.] No evidence was offered of any acts, or statements of Reid in connection with or relating thereto, on the night of December 2, tending to show that he was at any time that night doing any work for or transacting any business on behalf of his employer and certainly, under the above rule, if he had thereafter and subsequent thereto made statements to that effect and upon the trial plaintiff had offered a witness to testify he had heard Reid make such *post rem* statements or admissions the testimony would have been incompetent and properly excluded as hearsay. Applying then the rule, supra, as to declarations of an employee or agent we do not perceive· how the statements of some other agent or employee of defendant, made over the telephone, three and one-half months after the accident, which plaintiff undertakes to interpret as an admis-

sion that at the very time of the accident Reid was driving his brother's automobile in the performance of his work for his employer and in the course of his employment, can be competent as an admission against the company.

Plaintiff's position as to the competency of this testimony is not precisely stated but it may be grounded on the idea that the person responding to the telephone call stated that he was "the manager" and that "the manager" should be considered such an officer, or *alter ego,* of the corporation that any statement he at any time makes relating to any phase of the company's interests, rights or business, at that point, is competent and admissible, as an admission, against it. But we do not understand that a "manager" (the scope of the duties or authority of the manager does not appear herein) should be deemed to so represent the principal for all purposes that any statement or declaration at any time made by him in reference to the company's rights, interests or affairs, at that point, would be admissible in evidence against the principal. As we view the matter he comes within the general rule above stated and only declarations or statements made by him in the course of, relating to and connected with the ordinary business of the principal, within the scope of his authority, and then depending, are excepted from the hearsay rule and competent as admissions against his principal. A mere narration of certain alleged circumstances or conditions of a past event made long after the happening thereof, as in this instance, does not come within the exception to the hearsay rule. [1 R. C. L., p. 510, sec. 50, p. 512, sec. 52, and authorities cited, supra.] Further the general rule as to the telephone conversations, heretofore noted, that statements made by a person answering a telephone call to a place of business, though no personal identification is made of such person, in the course of negotiations relating to and in the transaction of the ordinary business of the company are admissible, the presumption being that such person is authorized to transact such business for the company, may be allowed, but the rule goes no farther, and the statement, in this instance, of the person answering the telephone that he was the manager, standing alone, is not sufficient to establish that fact. The authority of an agent cannot be established by his own declarations. [1 R. C. L., p. 511, sec. 51; 22 C. J., pp. 376, 441; 131 Am. St. Rep., p. 309; Waverly Timber & Iron Co. v. St. Louis Cooperage Co., 112 Mo. 383, 20 S. W. 566; The Salmon Falls Bank v. Leyser, 116 Mo. 51, 22 S. W. 504; Mathes v. Switzer Lumber Co., 173 Mo. App. 239, 158 S. W. 729; Minea v. St. Louis Cooperage Co., supra; and other cases cited, supra.] If plaintiff's theory is that by virtue of the position, office, or authority of a person, employed by a private corporation, *post rem* statements made by him, which would otherwise

not be competent, are admissible against the employer then such authority of the alleged agent must be proven by evidence other than his own declarations.

Assuming the statements of the person responding to the attorney's telephone call for the office of the Wolf Cheese Company to be admissible, do they amount to substantial evidence tending to show that on the night of December 2, 1932, D. R. Reid was driving his brother's automobile in the transaction of, or in connection with business of the company, or in the doing of his work for, or in the course of his employment by it and while so engaged struck and injured plaintiff? The statements must be considered in connection with the questions to which, in each instance, they were replies or responses. It will be remembered that apparently the attorney had not prior to that morning known that D. R. Reid had been employed by the cheese company; that when Shelton at that time so informed him the inspiration was born that prompted the telephone call. Apparently the cheese company had no intimation or information of any claim of liability on its part. Further the whole situation clearly shows that the person answering the telephone call to the company's office was unaware of the real and undisclosed purpose or import of the questions. First: "We would like to know if you had a D. R. Reid working for you on 2nd of December, 1932." The reply: "Yes, we did have." Second: "Was he working for you *at the time* he injured Frank Shelton, December 2, 1932, with an automobile?" (Italics ours.) The reply: "Yes he was working for us at that time." Clearly, we think, that question was, and must have been, understood merely to refer generally to the date of December 2, 1932, first mentioned and the date of the accident, and not, as plaintiff would have it, to the very time of the accident, about eight o'clock that night. Third: "What was he doing?" The question must have been understood, and naturally would be, in connection with the two preceding questions to refer to the date of December 2, generally and not to the precise time that night when the accident occurred and to be an inquiry as to what were his duties on December 2—what work did he do on that date. The reply so indicates: "He was out calling on some customers." That was Reid's regular, daily, line of work and it seems apparent that the reply meant no more than that on December 2, Reid was out calling on customers as usual and not that on the night of December 2, at the time plaintiff was struck, he was driving his brother's automobile in making calls on customers. Plaintiff says the last question referred to the very time of the accident: "You are sure he was working for you *at that time?*" (Italics ours.) Answer: "Yes," Again, in the light of the existing situation, the question must have been understood to refer generally to December 2, and

whether Reid was on that date employed by the company. The questions, as framed, would not likely disclose that the information sought was whether on the night of December 2, Reid was using his brother's automobile in performing some service or doing some work on behalf of the company or in connection with his employment by it, but would rather indicate, and convey the impression, that the party calling desired merely to ascertain whether Reid was employed by the company on December 2, the date of the accident, and if so what kind of work he was doing on that date. The strained and forced interpretation which plaintiff makes of these statements finds no least corroboration in, but rather is contrary to, the other evidence bearing on that phase or element of the case. With the telephone conversation considered in evidence, standing alone, as it does, and being all and the only evidence upon which liability of the company is predicated, we are inclined to consider it as being too conjectural, uncertain, and unsubstantial to make out a prima facie and submissible case against the company.

It follows that as a submissible case against the defendant, Wolf Cheese Company, was not made, it was entitled to a directed verdict. Therefore the order of the trial court granting plaintiff a new trial is reversed, and the cause remanded with directions to the court *nisi* to enter judgment, on the verdict, for the defendant Wolf Cheese Company. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.