**Darlene BROPHY, Plaintiff-Respondent,**

v.

**Nick CLISARIS, d/b/a Nick Carter's Surf 'N Sirloin, Defendant-Appellant.**

No. 31262.

St. Louis Court of Appeals.

Missouri.

May 21, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied June 25, 1963.

Murphy & Roche, Byron A. Roche, St. Louis, for defendant-appellant.

Eaker, Dempsey, Heath, Lloyd E. Eaker, Clayton, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action for damages for personal injuries resulting from a fall. In her petition plaintiff named as defendants Pan-American Realty Corporation and Nick Clisaris, d/b/a Nick Carter's Surf 'N Sirloin, but at the close of her case dismissed as to Pan-American, without prejudice. Verdict and judgment below was for plaintiff for $5000, from which defendant Clisaris has appealed.

Plaintiff's fall occurred in the ballroom of the Forest Park Hotel, in St. Louis, on December 31, 1957. The hotel building was owned by Pan-American, which by a written instrument (not introduced in evidence) had leased certain rooms to defendant Clisaris, including the ballroom. Defendant also operated a cocktail lounge named the Surf 'N Sirloin in other parts of the leased premises, and in addition carried on a catering business. An organization named the French Club, Society de Lafayette, arranged with defendant's catering manager to hold its New Year's Eve Party in the ballroom. The arrangements made provided for the use of the ballroom by the French Club, and a buffet supper to be served by defendant's catering service. A former member of the French Club, Gustav A. Schmidt, invited Herman Haenel to the party, and Haenel, in turn, invited plaintiff to accompany him.

It appears from the plaintiff's evidence that plaintiff, Haenel and Schmidt arrived at the hotel, apparently somewhere around 10:00 P.M. They had one drink apiece in the cocktail lounge, and then proceeded to the ballroom. Their table was situated against the west wall, towards the south end of the room. Sometime after they arrived food for the supper was carried into the ballroom from an adjacent kitchen by defendant's four waiters and placed on tables located along the east wall. The guests were served buffet style, and carried their own plates about the room.

Plaintiff testified that after reaching the ballroom she danced a couple of times, consumed part of one highball, and ate some food. Thereafter she left her table with the intention of going to the restroom, located outside of the ballroom. Plaintiff walked towards the doorway to the ballroom, which was situated in the northeast part of the room. According to plaintiff, Schmidt left their table at the same time she did and accompanied her partway across the room, but then stopped to talk to someone and she proceeded on alone. When she reached a point 8 to 12 feet south of the doorway her foot started to skid, " * * * it was like you were on ice * * *" and she fell to the floor. In an effort to break her fall she thrust out her hands. She stated that after her fall she did not notice anything on the floor. Two men who were nearby assisted her to her feet and seated her in a chair in the hallway just outside of the ballroom. Schmidt appeared a couple of seconds after she was seated and immediately went for Haenel. When Haenel arrived he drove her to St. John's Hospital, where she was given emergency treatment. The next day x-rays taken at St. Mary's Hospital revealed a Colles fracture of the

left wrist, which was reduced and a cast applied.

Schmidt's testimony differed somewhat from that of plaintiff's in that he stated that he did not leave the table with plaintiff nor walk partway with her towards the door. According to Schmidt, plaintiff was still sitting or standing at their table when he left to go to the lavatory. On his way out of the ballroom he slipped at a place about 10 to 12 feet diagonally south of the ballroom door, and upon looking to see what had caused him to slip observed spots of moisture on the floor, spread out over an area two feet in diameter. They were about five to seven feet from the table with the food on it. He spoke to a lady from the French Club about it, but not with any one connected with the hotel. He proceeded on to the lavatory, and upon coming out, saw plaintiff sitting in a chair in the hallway, with people standing around her, and learned that she had fallen. He immediately re-entered the ballroom to get Haenel, and on his way again looked at the place where he had previously seen the spots and slipped. He saw a wet place—moisture, dampness—which did not look the same as it had before. Schmidt stated that approximately 10 minutes elapsed from the time he slipped until he returned from the lavatory and saw plaintiff seated in the chair in the corridor.

Haenel testified that Schmidt came to him in the ballroom and said, " * * * 'She just fell, come on out.' " He went to the corridor, saw plaintiff sitting in the chair, and hustled her off to the hospital. On the way to the hallway he " * * * slipped at the same spot." Haenel could not remember where he was when plaintiff left the table to go to the restroom, and said that he didn't know when she left. He testified that about 10 to 15 minutes before he went to the hallway he saw a porter mopping the floor of the ballroom at a point a few feet inside the door. Subsequently he stated, "I saw him wheeling a stick around. I didn't actually see the mop but I saw him at the table there going like that. (Indicating)." And later, "He was

going like that. (Indicating) He was mopping, that's what he was doing." On cross-examination Haenel testified that he knew the man was a porter because, "He had a white coat on, and he was a colored man."

Plaintiff read into evidence, as admissions against interest, certain portions of the deposition of the defendant taken prior to the trial. Such portions included testimony as to the defendant's lease from Pan-American, and the arrangements made by his catering manager, Harry Mazer, with the French Society for the use of the ballroom and the food. They also included the following:

"Q. (By plaintiff's counsel) Besides Mr. Mazer and the four waiters, did you have any other employees working on that party on that occasion?

"A. Not while the affair was taking place. We did have porters who cleaned the room up prior, set up the room prior to this banquet.

"Q. But they were not present after the guests were in the room and the party was in progress?

"A. That's right. No, they were not present."

Plaintiff was also permitted, over the objection of defendant, to read that part of defendant's deposition to the effect that it was defendant's responsibility to keep the floor of the ballroom clean while the party was in progress.

Defendant's only witness was one John Noce, who testified that at the time of the occurrence he was bell captain of the Forest Park Hotel. On the night in question, however, he was in civilian clothes and was on the security watch, to discover any fires or quell any disturbances. He was in and out of the ballroom 10 to 12 times that night, and was in the room when plaintiff fell. According to Noce, plaintiff fell on the dance floor, towards the south

end of the room, and not near the door. He hadn't noticed her before she fell, and didn't know whether she had been dancing. Others reached plaintiff before he could, and seated her in a chair in the hallway. He offered to take plaintiff to the hospital in a cab. He smelled the odor of alcohol about plaintiff. Noce also testified he saw Haenel, who became abusive; and that Haenel's speech was slurred and he was staggering. Asked whether he had seen anything on the floor near the exit door he answered that he had seen nothing but dust, and had not noticed any grease spots or water on it.

■ Defendant's primary point on appeal is that plaintiff did not make a submissible case and that the court erred in overruling his motion for a directed verdict at the close of the whole case. No contention is made that the evidence failed to show a foreign substance on the floor, nor that plaintiff slipped and fell as the result thereof. What defendant does assert is that the plaintiff failed to prove either actual or constructive notice on the part of defendant of the foreign substance on the floor prior to plaintiff's fall. As a host of cases declare, in determining whether a plaintiff made a submissible case we must consider the probative evidence in the light most favorable to the plaintiff, and give the plaintiff the benefit of all favorable inferences that reasonably may be drawn from such evidence. However, as was recently stated in Probst v. Seyer, Mo., 353 S.W.2d 798, 802:

"* * * But, of course, the case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Neither may any fact essential to submissibility be inferred in the absence of substantial evidentiary basis. In other words, liability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. Willey v. Fyrogas Company, 363 Mo. 406, 251

S.W.2d 635, 642; Brawley v. Esterly, Mo., 267 S.W.2d 655, 659; Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 323; 32 C.J.S. Evidence § 1042, p. 1116. The question of whether the evidence in a given case is substantial is one of law for the court. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787–788; Tharp v. Monsees, Mo., 327 S.W.2d 889, 899."

■ The foundation upon which an action by a business invitee rests is the superior knowledge by the defendant of the defective condition of his premises which results in the injury to plaintiff. Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55; Bullock v. Sklar, Mo.App., 349 S.W.2d 381. The rule as to defendant's duty and liability to a business invitee, as stated in 2 Restatement, Law of Torts, Sec. 343, is as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

(c) invites or permits them to enter or remain upon the land without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to give a warning adequate to enable them to avoid the harm without

relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

This statement of the law has been repeatedly approved by our Supreme Court. Gruetzemacher v. Billings, supra; Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226; Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623.

In the instant case, therefore, it was incumbent on plaintiff to produce evidence showing either (1) actual knowledge by defendant of the existence of the foreign substance on the floor, or (2) constructive knowledge, in that the substance had remained on the floor for such a period of time that defendant by the exercise of ordinary care could have discovered it. Plaintiff asserts that she proved actual knowledge, and points to Haenel's testimony that 10 to 15 minutes before he learned of plaintiff's fall he saw a porter mopping the floor. He concluded that the individual was a porter because, "He had a white coat on, and he was a colored man." Plaintiff argues that the porter's knowledge of the slippery substance on the floor constituted actual knowledge on the part of the defendant. Inherent in plaintiff's contention is the tacit assumption that the porter was one of defendant's employees.

The weakness in plaintiff's argument is that there is no evidence from which such an inference reasonably may be drawn. There is no evidence in the record that any of defendant's waiters, or any other employee, wore a white coat. Nor is there any evidence that defendant had a colored man in his employ and present at the party, either as a porter, a waiter, or otherwise. It must be remembered that the ballroom was in a hotel operated by one other than the defendant, which undoubtedly had a variety of employees. One, in fact, John Noce, was present in the ballroom when plaintiff fell. For aught that appears in the evidence the member of the French Club, to whom Schmidt spoke about the foreign substance, may have summoned an employee of the hotel to clean it up.

Of greater significance, however, is the fact that the inference which plaintiff seeks to draw is diametrically contrary to plaintiff's direct evidence on the issue. It will be recalled that when plaintiff took defendant's deposition defendant testified in effect that he did not have a porter present while the party was in progress. Plaintiff voluntarily put such testimony in evidence by reading it to the jury. In the absence of any contradictory evidence, as is true here, plaintiff is bound by defendant's testimony and may not successfully invite us to disregard it. Browne v. Heeter, Mo., 267 S.W.2d 666; Cruce v. Gulf, Mobile & Ohio R. Co., Mo., 361 Mo. 1138, 238 S.W.2d 674; Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190. Nor was plaintiff entitled to make a submissible case by relying upon an inference which was contrary to her only direct evidence on the basic issue upon which her inference rested. Brooks v. Rubin, Mo., 293 S.W.2d 295; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511. Since plaintiff's evidence did not show that the alleged porter was one of defendant's employees, and in fact was to the contrary, it necessarily follows that plaintiff failed to prove actual knowledge on the part of the defendant.

Nor was the evidence sufficient to show constructive knowledge. The only testimony as to the length of time the foreign substance remained on the floor was that of Schmidt, who stated that approximately 10 minutes elapsed from when he slipped until he came out of the lavatory and saw plaintiff sitting in a chair in the hallway. The Supreme Court, as well as this court, has held as a matter of law that 10 to 15 minutes is not a sufficient length of time to charge a defendant with constructive knowledge of a foreign object on the floor. Robinson v. Great Atlantic & Pa-

cific Tea Co., 347 Mo. 421, 147 S.W.2d 648; Varner v. Kroger Grocery & Baking Co., Mo.App., 75 S.W.2d 585.

■ It follows that the court erred in failing to direct a verdict for defendant at the close of all the evidence, and that the judgment should be reversed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.