Glen **AKERS**, Plaintiff-Respondent,

v.

**LEVER BROTHERS COMPANY**, a Corporation, Defendant-Appellant.

No. 52824.

Supreme Court of Missouri,
Division No. 2.

July 8, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 14, 1968.

Kenneth S. Lay, Tremayne, Joaquin, Lay & Carr, Clayton, for respondent.

Joseph H. Mueller, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellant.

HARRY M. JAMES, Special Judge.

Plaintiffs, Glen Akers and Laverne Akers, husband and wife, instituted this action against Lever Brothers Company, a corporation, defendant, to recover damages as a result of personal injuries sustained by plaintiff Glen Akers and for plaintiff Laverne Akers' loss of consortium. The jury returned a verdict and judgment in favor of plaintiff Glen Akers and against the defendant in the sum of $50,000.00 and in favor of defendant and against said Laverne Akers. Thereafter, the Trial Court ordered plaintiff Glen Akers to remit the sum of $12,000.00 from the verdict in his favor, plaintiff Glen Akers did so, and judgment was entered in his favor and against defendant for the sum of $38,000.-00. Plaintiff Laverne Akers did not file any after trial motions and did not appeal from the adverse judgment rendered against her. Therefore, the adverse judgment against plaintiff Laverne Akers is final and this matter is presently before this Court on the appeal of defendant from the judgment rendered against it and in favor of plaintiff Glen Akers.

The facts, in so far as they are pertinent, are as follows: On February 9, 1961 plaintiff was employed as a construction engineer by the Guarantee Electric Company. In that capacity and on said date he was on the defendant's premises pursuant to his duties as an employee of the Guarantee Electric Company which had a contract with the defendant for the making of specific alterations in defendant's plant.

In performing this work, it was necessary for plaintiff and one Paul Lammert, a co-employee, to get on top of an elevator cage. The elevator cage in question was approximately 12 or 14 feet square and approximately 8 feet high. Three sides of the cage were solid and the top thereof consisted of wire mesh with an opening therein of approximately 5 feet by 18 to 24 inches. The floor of the cage was wooden and the inside of the cage was well lighted.

Plaintiff and Lammert got on top of the cage by using a 10 foot folding stepladder. Plaintiff placed this ladder, with its legs folded, in such a position that it was, for all practical purposes, straight up and down. Inasmuch as the ladder was placed in this position, the full bottom portion of the legs did not rest entirely on the floor.

Plaintiff and Lammert climbed the ladder to the top of the cage and noticed "dust" thereon. Plaintiff could look down through the wire mesh on the top of the cage with an unobstructed view.

While plaintiff and Lammert were engaged in their work, an employee of the defendant put a "truck", loaded with materials, in the elevator, and, thereafter, moved the elevator up to the third floor level. At that point, said employee of defendant removed the "truck" and left the door of the elevator shaft open while plaintiff and Lammert remained on the top of the cage. In approximately 20 or 30

minutes, this employee returned an empty "truck" to the elevator which was then lowered to the first floor level.

The defendant was engaged in the business of manufacturing powdered detergents such as Rinso, Silver Dust and other similar products. The ingredients necessary for the completed product were mixed in a large machine located on the third floor of defendant's premises. After the mixing is completed, the mixture is sprayed into a tower under pressure and against a counter current of hot air, thereby being dried into particles of varying sizes and shapes, then the particles dropped to the base of a tray, from there to a conveyor belt which raises them to a height of 36 feet and then by gravity through chutes to shaker screens which by rotating action eliminate coarse particles unfit for use. These shaker screens are located at a point approximately 30 feet from the elevator. Dust, particles of which are heavier than air, is created by the product falling upon and against the shaker screens.

While Mr. Akers and Lammert were on top of the elevator at the third floor level with the elevator door open, they could see nothing in the air; however, they felt "something". There was an odor, "something" irritating, a smarting and watering of the eyes, coughing and running of the nose. They were told it was a powder or dust. Plaintiff, while in this position, used a gauze respirator or mask over his face. Later, a white powder was discovered on the gauze respirator. Plaintiff and Lammert did not see, at any time, anything on the floor of the elevator.

After the work on top of the elevator was completed, plaintiff was in the process of descending the above referred to ladder, when said ladder "slipped" causing plaintiff to fall to the floor of the elevator cage, and thereby receive serious and permanent injuries.

In light of our holding herein, it is not necessary to set forth the nature and extent of plaintiff's injuries.

The case was submitted to the jury with instructions under which, in order to return a verdict for plaintiff Glen Akers, the jury was required to find, among other things, that "there was a powdered detergent on the floor of defendant's elevator which had accumulated while the elevator was at the third floor of defendant's building and as a result the elevator floor was not reasonably safe * * *".

Defendant contends that the Trial Court erred in overruling defendant's motion for a directed verdict in its behalf made at the close of plaintiff's case, in overruling defendant's motion for a directed verdict made at the close of all the evidence, and in not sustaining defendant's after trial motion for a judgment in its favor and against plaintiff Glen Akers in accordance with its motions for a directed verdict. In support of this contention, defendant urges that there was no evidence presented to show or from which the jury could infer that there was a powdered detergent on the floor of defendant's elevator. In short, defendant contends that plaintiff failed to make a submissible case.

■ It is hornbook law and a multitude of cases declare that, "In determining whether or not a submissible case was made for the jury against * * * [defendant], we must consider plaintiff's evidence from a viewpoint most favorable to plaintiff and give plaintiff 'the benefit of every reasonable favorable inference which the evidence tends to support.'" Austin v. Western Auto Supply Co., Mo.Sup., 421 S. W.2d 203, 204; Gibson v. Newhouse, Mo. Sup., 402 S.W.2d 324, 327.

A searching review of the transcript on appeal clearly indicates that there is no direct evidence of the presence of any powdered detergent on the floor of defendant's elevator. Plaintiff's evidence, on this point, consisted of the testimony of plaintiff Glen Akers and Paul Lammert.

Plaintiff, on direct examination, was asked the following question concerning

the existence of a powdered substance on the floor of the elevator:

"Q. And after you got back down to the first floor did you observe any difference in the appearance of the floor of the elevator?

"A. No. No difference whatsoever.

\*     \*     \*     \*     \*     \*

"Q. You did not notice any difference?

"A. I didn't notice any difference."

Plaintiff, Glen Akers, on cross-examination, was asked the following questions:

"Q. I said inside on the elevator floor at any time did you ever detect any slippery substance on that floor of that elevator?

"A. No, No.

\*     \*     \*     \*     \*     \*

"Q. At any time before or after (this accident), Mr. Akers, did you ever detect any slippery substance?

"A. No.

\*     \*     \*     \*     \*     \*

"Q. Did you observe anything different about the floor of the elevator up there?

"A. No, No, No, Sir."

Paul Lammert, called as a witness for plaintiff, testified on direct examination:

"Q. Did you notice any substance or any unusual condition on the floor of the elevator on this occasion?

"A. I can't say I really did, No, on the floor."

On cross-examination, witness Lammert testified as follows:

"Q. At any time—I will confine it to the day of this accident on February 9, 1961, Mr. Lammert, did you ever observe or determine whether or not the floor of that elevator car was slippery in any way, shape or form?

"A. No.

\*     \*     \*     \*     \*     \*

"Q. Now, at any time before or after this fall—strike that. I will confine it to February 9, 1961. Did you ever see any dust, or any powder or anything of that nature on the floor of the elevator car?

"A. I can't remember for sure."

As the above quoted testimony illustrates, the transcript on appeal is utterly void of any direct evidence of the presence and/or existence of any powdered detergent on the floor of defendant's elevator.

We now direct our attention to the existence of any circumstantial evidence, in light of the foregoing testimony, concerning the essential element of plaintiff's case, to wit: the existence of powdered detergent on the floor of defendant's elevator.

■ "Of course, a finding essential to recovery may be proved by circumstantial evidence; but, our appellate courts have said repeatedly that, in civil cases, the shown circumstances must be such that the facts necessary to support the finding may be inferred and reasonably must follow, that the existence of such facts may not depend upon guesswork, conjecture and speculation, and that the evidence should have a tendency to exclude every reasonable conclusion other than the one desired. \* \* \*" Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 498; Osterhaus v. Gladstone Hotel Corporation, Mo., 344 S.W.2d 91; Lindsay v. Wille, Mo., 348 S.W.2d 1, 4; Titone v. Teis Construction Co., Mo.App., 426 S.W.2d 665, 669.

Plaintiff would have the jury infer the existence of powdered detergent on the floor of defendant's elevator from the following facts: the elevator cage was allowed to remain at the third floor level, with the door open, for a period of approximately 20 to 30 minutes while the manufacturing of soap powder, as above described, was being carried on; that while the elevator was in that position plaintiff and witness Lammert, while they could see nothing in the air, felt "some-

thing", detected an odor, "something" was irritating and caused a smarting and watering of eyes, coughing and running of the nose; they were told it was a powder or dust; that at a later time a white powder was seen on a gauze respirator worn by plaintiff; and that there was "dust" on top of the elevator.

There are two weaknesses in plaintiff's argument in this regard.

First, the offered evidence did not have a tendency to exclude every reasonable conclusion other than the one desired. Titone v. Teis Construction Co., supra.

■ Secondly, and of greater significance, "is the fact that the inference which plaintiff seeks to draw is diametrically contrary to plaintiff's direct evidence on the issue. * * * Nor was plaintiff entitled to make a submissible case by relying upon an inference which was contrary to her only direct evidence on the basic issue upon which her inference rested". Brophy v. Clisaris, Mo.App., 368 S.W.2d 553, 558; Brooks v. Rubin, Mo., 293 S.W.2d 295; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511. As indicated by the above quoted testimony, plaintiff and witness Lammert clearly and unequivocally testified that they did not observe any powdered detergent on the floor of defendant's elevator.

■ Inasmuch as plaintiff's direct evidence did not show that there was a powdered detergent on the floor of defendant's elevator and, in fact, was contrary thereto, and inasmuch as this fact cannot be inferred from the evidence adduced, it necessarily follows that plaintiff failed to prove that there was powdered detergent on the floor of defendant's elevator. This was an essential ingredient of plaintiff's case and a necessary element which the jury had to find in order to return a verdict for plaintiff under his verdict directing instruction.

The case of Miller v. Sabinske, Mo.App., 322 S.W.2d 941, cited by plaintiff, is not in point for the reason that, first, the circumstantial evidence in that case was more substantial and did, in fact, have a tendency to exclude every reasonable conclusion other than the one desired and, secondly, and more importantly, the inferences which plaintiff sought to draw, in the case cited by plaintiff, were not diametrically contrary to plaintiff's direct evidence on the issue.

Plaintiff also cites the case of Zacher v. Missouri Real Estate and Insurance Agency, Inc., Mo., 393 S.W.2d 446, in support of his position. In that case, this Court held that plaintiff made a submissible case even though there was no direct evidence that her fall occurred when she stepped in water on the defendant's floor. Plaintiff testified that she didn't know what happened and she couldn't say she stepped in a puddle. However, she did testify, and it is extremely significant, that after she fell she was in water and her coat, hands and hair were wet and that there were accumulations of water elsewhere in the area. These facts clearly distinguish the cited case from the case presently before the Court.

Only by resorting to speculation and conjecture outside of and beyond the scope of the evidence may it be found that there was a powdered detergent on the floor of defendant's elevator. That being true, plaintiff failed to make a submissible case and the judgment in his favor must be reversed.

This disposition of this case makes it unnecessary to consider defendant's other contention relating to the excessiveness of the judgment rendered.

Judgment reversed.

EAGER, J., and Finch, P. J., concur.

DONNELLY, J., not sitting.