Irene PRUIETT, Respondent,

v.

Robert WILFORM and Star Service & Petroleum Company, a Corporation, Appellants.

No. 55745.

Supreme Court of Missouri,
Division No. 2.

March 13, 1972.

Don B. Sommers, Sommers, Montrey & Holloran, St. Louis, for. respondent.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for appellants.

HENRY I. EAGER, Special Commissioner.

This is an action for wrongful death by the widow of Robert Pruiett who died on February 11, 1967, from a gunshot wound. The shot was fired from a gun held in the hand of the individual defendant Robert Wilform, on the premises of a service station in St. Louis owned and operated by defendant Star Service & Petroleum Company. Plaintiff had a verdict and judgment for $25,000 and both defendants appealed, after the overruling of after-trial motions for judgment or a new trial.

The primary issue here is whether the shot was fired intentionally or accidentally. Plaintiff pleaded that the deceased, "without provocation on his part, was suddenly, wrongfully and without warning shot in the head by a gun in the hands of defendant Robert Wilform * * *"; and also: "That the shooting of her husband by defendant Robert Wilform * * * was intentional unlawful and constituted aggravating circumstances * * *." The submission of the case for plaintiff was solely upon the theory (Instruction 3) that: "Second, Robert Wilform intentionally fired a hand weapon at Robert Pruiett," thereby causing his death. The Court refused negligence instructions offered by plaintiff for the reason that the issue was outside the pleadings. Defendants' converse Instruction No. 5 directed a verdict for both defendants if the jury did not believe that the firing was intentional.

Wilform was the "Assistant Manager" of the Star Service station at 4686 Natural Bridge Road in St. Louis; he worked as an attendant from 3:00 to 11:00 p. m. He was 33 years old at trial. He was put on the stand by plaintiff, and many of the facts now related came from his testimony. The deceased Pruiett, a Negro male 28 years of age, worked as a laborer in construction work. He was frequently out of work in cold weather. He had occasionally bought gas at this service station, and Wilform knew him only casually and as a customer. On February 10, 1967, Pruiett had been in the station several times while Wilform was on duty; he had asked Wilform to lend him money, first $2.00 and then $1.50, but had been refused; Wilform explained that if he

let Pruiett have any money out of the cash register he, personally, would have to replace it. Some of this conversation was such that "You might say there was an argument * * *." Wilform testified that he knew Pruiett had been drinking. On the last occasion when Pruiett came in before the shooting he had said, "I got some money" and Wilform said, "Okay." Apparently Wilform remained at the station until about 12 midnight; at that time two of his friends, who had been there previously and had borrowed his car, came back and the three went across the street to a bar, where Wilform had a "couple" of drinks. They came back to the station about 1:00 or 1:15 a. m. The night man, Aurelius Bryant, then asked Wilform to look over his "check-in sheet" which he did. At the time Pruiett drove in on the final and fatal visit, perhaps a little before 1:30 a. m., there were five or six men in or around the office of the station. Pruiett had a girl in the car with him. Wilform was ready to take his two friends, Tramble and his brother-in-law, home; Bryant was outside. The driver's side of the Pruiett car was stopped in front of and very close to the office door. When Pruiett drove up he asked Bryant to get him some cigarettes and also made some remark which Wilform heard but did not understand clearly; he thought Pruiett said: "He better have his. I got mine," or something to that effect. Apparently Bryant went to the machine to get the cigarettes. At this time Wilform started out to go to his car and leave. Tramble was close behind him. Wilform, as he started out the door, stepped to the side of Pruiett's car and said, "What did you say?" At this time, according to Wilform, Pruiett reached down "underneath the seat," Wilform then drew his pistol from his pocket, standing close to the car, the door came open suddenly and hit Wilform's arm, and the pistol went off. Wilform also testified that Pruiett "shoved" the door open and came, or started to come, out of the door, and that all this happened in perhaps three or four seconds. Wilform said he thought that Pruiett was getting something "to get me with" when he drew his pistol; he had seen no weapon on Pruiett but had been told by Tramble that he displayed a pocketknife in the office earlier. Wilform testified specifically three times, and without objection, that he shot Pruiett accidentally. Parts of the foregoing facts were corroborated by Aurelius Bryant and John Tramble whose prior testimony at the coroner's inquest, along with a question and answer statement from Bryant, were admitted by stipulation. In substance, they (chiefly Bryant) verified the facts that: Wilform walked over to the car, and stood right at the door; Pruiett leaned over or down, then raised up, the door opened, Pruiett put one foot out, and immediately the shot was fired; also that when Pruiett opened the door it hit Wilform, who then staggered backwards into Tramble who was just coming out of the office door. Pruiett fell out on to the pavement; no weapon was found on him; he did have a small pocketknife. All of the foregoing evidence was produced in plaintiff's case. Defendant Star Service stood on its motion for a directed verdict. Wilform put on two witnesses concerning the autopsy.

Wilform had bought the gun, a .25 caliber automatic, with the assent of the station manager, after a holdup of the night man shortly before. A gun was kept there previously, but it had been taken in the robbery. Wilform testified that he carried the pistol to protect himself, adding incidentally that it was also for the protection of the property. Defendants offered to prove that Wilform had been instructed by the supervisor "not to resist" holdups. This evidence was rejected as "hearsay." An autopsy on Pruiett's body disclosed 0.15% of alcohol by quantitative test.

Plaintiff offered the record of a plea of guilty by Wilform "to the crime of manslaughter" as of September 8, 1967, and a one year's suspended sentence with probation, as of October 17, "1966," obviously meaning 1967. Plaintiff offered also to read the indictment, defendants objected,

and counsel for plaintiff said: "Well, I will read only this other part * * *," apparently withdrawing that part of the offer. There was no ruling. Counsel for Star Service moved that the Court instruct the jury that such plea and conviction were not to be considered as evidence against it, and the Court stated that this was "correct." Wilform, in testifying, admitted the plea, but stated that he had no other "alternative." After the evidence was closed and the separate motions for directed verdicts overruled, plaintiff's counsel discussed and, in effect, asked for an amendment to incorporate a theory of negligent shooting in order to conform, so he said, to the opening statement, the evidence, and the motions for directed verdicts. The Court declined to allow this except upon a continuance, and counsel declined to accept it upon that basis. There was no amendment. The motions for directed verdict were most explicit, raising all points in issue here.

As stated, plaintiff's case was submitted solely on the theory of an intentional shooting, and that theory was expressly conversed by both defendants. Instructions No. 4 and No. 6 were given on agency, pro and con.

The first question is whether there was sufficient evidence to support the submission of an intentional shooting. Of course, the evidence must be substantial. Brassfield v. Sears, Mo., 421 S.W.2d 321. It is conceivable that Wilform might have been deemed negligent in holding his pistol, or his arm, in a position where it could be struck by the door. But we have no such issue here. The theories are wholly different. McLaughlin v. Marlatt, 296 Mo. 656, 246 S.W. 548. The evidence of a plea of guilty by Wilform to manslaughter, made months after the shooting, could not be admissible against his employer. State ex rel. Kroger Co. v. Craig, Mo.App., 329 S.W.2d 804, and cases cited; Mattan v. Hoover Co., 350 Mo. 506, 166 S.W.2d 557, 566; Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S.W.2d 947; Chawkley v. Wabash Ry. Co., 317 Mo. 782, 297 S. W. 20. Wilform, plaintiff's witness, testified directly that the shooting was accidental. No other witness testified to the contrary. This being true, the plaintiff did not make a submissible case against Star Service, for she is bound by the testimony of her only witness. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626; Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589; Akers v. Lever Bros. Co., Mo., 432 S.W.2d 200; Harper v. St. Joseph Lead Co., Mo., 233 S.W.2d 835. In Draper, supra, the Court said, 156 S.W.2d at loc. cit. 634: "Nevertheless, since a plaintiff has the burden of proof, if he puts on only one witness to prove a fact and his positive statement on direct testimony is that the fact is definitely one way, then the plaintiff cannot have the jury disregard his only direct evidence on the point and find that the fact is exactly the opposite on the basis of inferences from circumstances also stated in the testimony of this same witness. This is not so much a matter of being bound by what his witness says as it is a failure of proof of an essential fact." Any inference from circumstances in the present case that the shooting was intentional would be based upon speculation and conjecture, since it would be contrary to the only direct evidence. Akers, supra; Brophy v. Clisaris, Mo.App., 368 S.W.2d 553; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511.

Counsel seek to establish a theory that there was an intentional "assault" when Wilform drew his gun, with an intent to "bring about a harmful or offensive contact or apprehension thereof, * * *," relying on Restatement of Torts, § 13, (see Restatement 2nd, § 18) and citing also Martin v. Yeoham, Mo.App., 419 S.W.2d 937. In that opinion both assault and battery were defined, but it is not persuasive on our facts; and the Court expressly distinguished between negligent and intentional injuries and their respective modes of submission. If plaintiff means that an inten-

tional drawing of the gun, as an assault, would also make the subsequent firing intentional, regardless of the contrary evidence, we simply cannot agree. Moreover, plaintiff did not so plead or submit her case; she pleaded that the *shooting* was intentional and she submitted her case in *that* way.

In the cited case of Daggs v. St. Louis-San Francisco R. Co., Mo. App., 51 S.W.2d 164, the Court said that one who *uses* a deadly weapon upon a vital part of another is presumed to intend death. From the facts there it is clear that the Court was referring to an intentional shooting, of which there was specific evidence. We have examined all of plaintiff's cited cases but we do not find them persuasive on the submissibility of plaintiff's case. We conclude that plaintiff did not make a submissible case against Star Service & Petroleum Company upon its theory of an intentional shooting, and that its motion for a directed verdict should have been sustained.

We now consider the liability of Wilform. What we have said concerning the sufficiency of the oral evidence to establish an intentional shooting applies also to him. The one difference arises from the evidence of his plea of guilty to "manslaughter." Generally speaking, a plea of guilty is admissible in any subsequent proceeding against the one who made it, for it is a solemn confession of the truth of the charge. State v. Hadley, Mo., 249 S.W.2d 857. But, although admissible in a subsequent civil case, it is not conclusive, and it may be explained. State Farm Mutual Automobile Ins. Co. v. Worthington (CA 8), 405 F.2d 683, (cited by plaintiff); Howard v. Riley, Mo., 409 S.W.2d 154. The difficulty with the record plea of guilty in this case is that it merely recited a plea to "manslaughter." In Missouri, manslaughter is and has been defined as: "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or

justifiable homicide, shall be deemed manslaughter." Section 559.070, RSMo 1959, V.A.M.S. Thus, manslaughter may be an intentional killing or one due to culpable negligence. The admission of the record of the plea without the indictment or information did not constitute substantial evidence of an intentional shooting. That being true, there was no more evidence for submission against Wilform than there was against Star Service. Counsel have argued on behalf of Wilform that evidence of the plea was not sufficient to make a submissible case because it was a mere "compromise." We do not uphold that argument, but we cannot ignore the plain wording of our own statute and the complete absence of any evidence of the charge, even though not specifically called to our attention. In State Farm Mutual, supra, cited by plaintiff, it was charged that defendant did: "willfully, unlawfully and feloniously on purpose make an assault * * and * * * feloniously, willfully and on purpose" shoot the deceased. The formal charge was in evidence there. We hold that the evidence was thus insufficient for submission of the issue of intentional shooting against Wilform, since the plea of guilty means substantially nothing without a record of the charge. However, since the defect may be remedied upon another trial we shall reverse and remand the case as to Wilform. The plaintiff made her choice of submission as against the corporate defendant and has failed to make a case against it on the theory pleaded and submitted; the evidence against it was fully developed. The trial court is directed to enter judgment for that defendant and to hold it in abeyance pending a final disposition of the case against defendant Wilform.

In view of the foregoing, any discussion of the question of agency or of the evidence concerning instructions to Wilform is rendered immaterial.

The judgment against Star Service & Petroleum Company, a corporation, is reversed. The judgment against Robert Wil-

form is reversed and the cause as to him remanded for a new trial.

It is so ordered.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and PRITCHARD, Special Judge, concur.